LORD CLARENCE H. E. ZEIGLER, Appellant, vs. THE ILLINOIS TRUST AND SAVINGS BANK, Exr., Appellee.

*Opinion filed April 21, 1910—Rehearing denied June 8, 1910.*

1. APPEALS AND ERRORS—*when the Supreme Court may review facts relative to claim against estate.* Where a claim against an estate is based on purely legal demands and no equitable defenses are made and there is no exercise by the probate court of its chancery powers, the judgment of the Appellate Court is final as to controverted questions of fact; but if the defense interposed is purely equitable or the probate court is required to exercise equitable jurisdiction the Supreme Court may review the facts.

2. SAME—*what does not constitute an equitable defense to a claim.* The defense that a contract was executed during the existence of the fiduciary relation of physician and patient and that it is therefore presumptively fraudulent is one which may be interposed in an action at law by the physician to recover on the contract, and hence the interposition of such defense to a claim against the patient's estate based upon such contract merely shifts the burden of proof and does not require an exercise of equitable powers by the probate court.

3. SAME—*finding that contract is against public policy is not a finding of fact.* A finding by the Appellate Court that the written contract upon which a claim against an estate was based was void, as being against public policy, is a finding of law and not of fact, and is not binding upon the Supreme Court.

4. PUBLIC POLICY—*where public policy of State is found.* The public policy of a State is to be found in its constitution and statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of the government officials.

5. SAME—*law requires utmost freedom of contracting between competent parties.* The laws and public policy of the State permit and require the utmost freedom of contracting between competent parties, and it is only when a contract expressly contravenes the law or the known public policy of the State that the courts will hold it void on that ground.

6. CONTRACTS—*fact that contract may furnish some incentive to crime does not render it void.* The fact that the benefits to accrue to one party to a contract are conditioned upon the death of the other, as in case of contracts to devise property at death, and the like, does not render such contracts void, as against public pol-

icy, upon the ground that they furnish an incentive to the beneficiary to hasten the death of the other party.

7. SAME—*what contract between physician and patient is not void.* A contract between physician and patient whereby the former agrees, for a fixed sum to be paid after the other's death, to render professional services and furnish medicine to the patient for the remainder of her natural lifetime in any sickness or indisposition she may suffer at any time or place, is not void as against public policy or as a wagering contract.

8. EVIDENCE—*burden of proof where parties to contract occupy a fiduciary relation.* Where parties to a contract occupy the relation of physician and patient at the time the contract is executed, the burden is upon the former to show that the latter had competent and disinterested advice *or* that she entered into the contract voluntarily, deliberately and advisedly, knowing its nature and effect, and that her consent was not obtained by reason of the influence arising from the existence of the fiduciary relation, but he is not required to establish both propositions.

9. SAME—*when statements of deceased person are admissible.* Statements of a deceased person, made to various persons during her lifetime, with reference to a contract made by her with her physician, her purpose in executing it and the services rendered by the physician, are competent, as admissions against interest, for the purpose of sustaining a claim against her estate based upon such contract.

10. DEPOSITIONS—*depositions may be taken in matter of proving claim against estate.* Section 60 of the Administration act, when construed in connection with the act relating to evidence and depositions, permits the taking of depositions in a proceeding in the probate court to establish a claim against an estate.

11. MEDICINE AND SURGERY—*what does not render physician's contract invalid.* A contract by a physician to treat his patient professionally for any sickness she might suffer is not rendered invalid by the fact that he had no license to practice medicine in the State where the patient was temporarily sojourning at the time of her death, where he was duly licensed to practice medicine in the State where the contract was made and was merely attending such patient, and not in general practice in the other State.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

BULKLEY, GRAY & MORE, for appellant:

Public policy is that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good. Page on Contracts, sec. 326; *People* v. *Gas Trust Co.* 130 Ill. 268; 2 Bouvier's Law Dict. 792.

Whether a contract is against public policy is a question of law for the court to determine from all the circumstances of each case. 9 Cyc. 483; *Brush* v. *Carbondale,* 229 Ill. 144; Greenhood on Public Policy, rule 140; *Mulligan* v. *Smith,* 76 Pac. Rep. 1063; *Pierce* v. *Randolph,* 12 Tex. 290.

The design to prejudice the public interest must clearly appear to warrant a court in denouncing a contract as void. Greenhood on Public Policy, rule 129; Page on Contracts, sec. 326; *Edwards* v. *Goldsboro,* 53 S. E. Rep. 652; *Gillett* v. *Logan County,* 67 Ill. 256; *Wakefield* v. *VanTassell,* 202 id. 41; *Brown* v. *Bank,* 137 Ind. 655; *Goodrich* v. *Tenney,* 144 Ill. 422; *Crichfield* v. *Paving Co.* 174 id. 466; *Insurance Co.* v. *Brainard,* 72 Iowa, 130.

No court should refuse, upon doubtful and uncertain grounds, to enforce a contract made for lawful purposes, upon a lawful and valuable consideration, between parties *sui juris. Swann* v. *Swann,* 21 Fed. Rep. 299.

To be against public policy the agreement itself must contemplate illegal acts. *Holman* v. *Johnson,* Cowp. 341; *Drake* v. *Lauer,* 93 App. Div. (N. Y.) 86.

Attempts of courts to relieve from onerous contracts because foolish or improvident are without warrant of law and against public interests. *Craig* v. *Insurance Co.* 61 S. E. Rep. 423.

The public policy of a State is evidenced by its constitution, statutes and judicial decisions. *Atlantic Coast Line Co.* v. *Beazley,* 45 So. Rep. 761; *Smith* v. *DuBose,* 3 S. E. Rep. 309; *Brush* v. *Carbondale,* 229 Ill. 144.

Where the parties to a contract do not contemplate the commission of any crime, the fact that the contract offers an incentive to do so will not render it illegal. This is well shown in contracts in which the benefit to accrue to one of the parties is conditioned on the death of the other, thereby giving the former an interest in the death of the latter. 15 Am. & Eng. Ency. of Law, (2d ed.) 958; *Watson* v. *Mahon,* 20 Ind. 223; *Stone* v. *Pennock,* 31 Mo. App. 544; *Howe* v. *Watson,* 179 Mass. 30; *Brown* v. *Odill,* 56 S. W. Rep. 840.

The privilege of contracting is both a liberty and a property right, within the meaning of both the State and Federal constitutions. *Coal Co.* v. *Harrier,* 207 Ill. 624; *Harding* v. *People,* 160 id. 469; *Chicago* v. *Hulbert,* 205 id. 346; *Ritchie* v. *People,* 155 id. 98; *Bailey* v. *People,* 190 id. 28; *Mathews* v. *People,* 202 id. 389; *Bryan* v. *People,* 216 id. 354.

JAMES C. HUTCHINS, and MAX BAIRD, (L. D. CONDEE, and L. R. ATKINS, of counsel,) for appellee:

There is no precise definition of public policy. Each case must be judged according to its own peculiar circumstances, testing it by the general rule that "no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Railroad Co.* v. *Railway Co.* 93 Fed. Rep. 543; *Egerton* v. *Brownlow,* 4 H. L. Cas. 196; *Brush* v. *Carbondale,* 229 Ill. 114; Page on Contracts, sec. 326.

A contract affording an incentive to the commission of a crime is void, as against sound public policy. The evil tendency of a contract is sufficient to condemn it. *Gillett* v. *Logan County,* 67 Ill. 256; *Goodrich* v. *Tenney,* 144 id. 442; *Crichfield* v. *Paving Co.* 174 id. 466; *Warnock* v. *Davis,* 104 U. S. 775; *Egerton* v. *Brownlow,* 4 H. L. Cas. 1; 15 Am. & Eng. Ency. of Law, (2d ed.) 933, 934.

The test is the evil tendency of the contract,—not its actual injury to the public in particular case.  9 Cyc. 481.

Contracts which have a tendency to encourage the crimes of perjury and subornation of perjury and to corrupt public servants are void, as against public policy, even though in the particular cases the parties intended no wrong and no unlawful or criminal act was, in fact, committed.  *Gillett* v. *Logan County,* 67 Ill. 256; *Goodrich* v. *Tenney,* 144 id. 430.

A contract like the contract at bar, between a physician and patient, where the compensation reserved is not to be paid until the death of the patient, and then only if the physician survives, places a premium upon the shortening of the life of the patient, and thus creates a powerful motive for the commission of a crime on the part of the doctor.  It is thus, under the general principles and decisions above stated and cited, contrary to public policy and void. *Dent* v. *Bennett,* 7 Sim. Ch. 538; *Cole* v. *Gower,* 6 East. 110; *Dent* v. *Bennett,* 4 M. & C. 268.

Thus the courts have reasoned that a policy taken out by one who has no interest in the life of the insured creates a motive for taking that life and is void on that account. This reasoning forcibly applies to the case at bar.  *Ruse* v. *Life Ins. Co.* 23 N. Y. 516; *Warnock* v. *Davis,* 104 U. S. 775; *Insurance Co.* v. *Hogan,* 80 Ill. 35; *Life Ins. Co.* v. *Schaffer,* 94 U. S. 457; *Ritter* v. *Life Ins. Co.* 169 id. 139; *Gilbert* v. *Moose,* 104 Pa. St. 74.

That such policies actually lead to the commission of the crimes of murder and suicide is shown in *Life Ins. Co.* v. *Armstrong,* 117 U. S. 591; *Burt* v. *Life Ins. Co.* 187 id. 362; *Ritter* v. *Life Ins. Co.* 169 id. 139.

The contracts in question tend to create a conflict between duty and self-interest and are void on that account. *Merritt* v. *Lambert,* 10 Paige, 352; *Insurance Co.* v. *Brainard,* 72 Iowa, 130; *Brown* v. *Bank,* 137 Ind. 655.

A contract predicated upon chance or casualty or an unknown or contingent event is in the nature of a gambling transaction and is void under the statute.   1 Starr & Cur. Stat. chap. 38, par. 254, p. 1298.

The contract between a physician and patient is a personal one, and the physician cannot delegate his duties to a third person.   In case of his physical disability or death the contract is avoided.   *Powell* v. *Newell,* 59 Minn. 406; *Schultz* v. *Johnson's Admr.* 44 Ky. 497;  7 Am. & Eng. Ency. of Law, (2d ed.) 147, and cases cited.

Mr. JUSTICE COOKE delivered the opinion of the court:

The appellant, Dr. L. C. H. E. Zeigler, filed a claim in the probate court of Cook county against the estate of Harriet G. McVicker for $110,000, which consisted of three items, the first being for $100,000, based on two written contracts, or, in the alternative, for reasonable compensation as a physician for services and medical attention from December 19, 1899, to April 30, 1904, and the second and third for $5000 each, claimed to be due on an oral contract.   The probate court allowed the second and third items but refused to allow the first.   The appropriate order was entered, from which both the executor and the claimant appealed to the circuit court.   There the two appeals were consolidated and tried as one before a jury.   The jury returned a verdict for the claimant for $100,000.   The court entered judgment for this amount and for costs, to be paid in due course of administration.   From this judgment the executor appealed to the Appellate Court for the First District, where the judgment of the circuit court was reversed, with a finding of fact that "the contracts in evidence of December 19, 1899, and of July 24, 1901, are void, as being against sound public policy."   From this judgment the claimant has prosecuted a further appeal to this court.

The facts as disclosed on the trial in the circuit court are as follows: The appellant is a physician and surgeon and was licensed to practice medicine in this State on January 17, 1899. He is also engaged in the practice of osteopathy. On April 24, 1899, he leased three rooms in the McVicker Theatre building, in the city of Chicago, from Mrs. Harriet G. McVicker, which, so far as the evidence discloses, was the first time he had ever met her. These rooms, which adjoined a room used by Mrs. McVicker as an office, were used by Dr. Zeigler as his office. Mrs. McVicker's exact age is not given, but it appears that at that time she was about seventy-eight or seventy-nine years of age. She had been a sufferer from various maladies, among them being ailments of the heart, stomach and kidneys, an affliction which caused a stiffness of the knee joints, and some disease peculiar to her sex. She employed Dr. Zeigler and he began treating her some time during the month of October, 1899. Shortly thereafter one John Janes, now deceased, who was a friend of many years' standing of Mrs. McVicker, presented to appellant, on her behalf, a contract executed by her, whereby appellant was to be paid out of her estate, after her death, the sum of $100,000, in ten equal annual installments, in consideration of appellant giving her such medical attention as she should require during the remainder of her lifetime. Appellant objected to the installment plan of payment and to other features of the instrument and refused to execute or accept it. On December 19, 1899, appellant and Mrs. McVicker executed a contract, which provided that appellant should give her such medical attention as she should require during her lifetime and at her death should be paid the sum of $100,000 out of her estate. This was executed by Mrs. McVicker by the name of "Mrs. J. H. McVicker." Some time thereafter Dr. Zeigler was advised to have the contract re-executed, on account of the fact that Mrs. McVicker, in executing it, had used the initials of her deceased

husband instead of her own name. Mrs. McVicker agreed to do this. On July 17, 1901, she sent for Rev. William F. Black, who had been a friend of her husband in his lifetime and whose custom it was to make weekly calls on Mrs. McVicker, to consult with him about the contract. John Janes was the only other person present on this occasion. Rev. Black gave it as his opinion that the contract' was properly executed as it was, but Janes advised the change. Mrs. McVicker insisted upon the writing of a preamble to the re-written contract, explaining her reasons for executing it anew. This she dictated to Janes, who took it down. This was later returned to Mrs. McVicker by Janes and a comparison made with the original contract. Appellant was not present on these two occasions. A typewritten copy was then made of the new contract, and the same was executed by Mrs. McVicker and the appellant in the room of the former at the Lexington Hotel on July 24, 1901, in the presence of Mr. and Mrs. Emil Lindner, friends of both appellant and Mrs. McVicker, who had been invited by her to come there for that purpose. With the exception of the explanatory part, this contract was identical in language with the contract of December 19, 1899, and is as follows:

"CHICAGO, ILLINOIS, *July 24th, 1901.*

"This agreement or contract by and between Mrs. Harriet G. McVicker of Chicago, Ill., of the first part, and L. C. H. E. Zeigler, M.D., of Chicago, Ill., of the second part:

"*Witnesseth:* That the first party, Mrs. Harriet G. McVicker, first entered into this agreement or contract with Dr. Zeigler, party of the second part, on the nineteenth day of December, eighteen hundred and ninety-nine, (Dec. 19th, 1899.) The original contract will be found hereto attached. A second contract was thought to be necessary because of the signature of the first and original contract being signed Mrs. J. H. McVicker instead of Mrs. Harriet G. McVicker. That the party of the second part having been advised to have the signature changed from Mrs. J. H. McVicker to Mrs. Harriet G. McVicker, presented the first and original instrument to the party of the first part, Mrs. Harriet G. McVicker, for the purpose of getting her consent in its being changed. On being apprised of the possibility of some legal

technicality, Mrs. Harriet G. McVicker, party of the first part, immediately acquiesced and caused this the second contract to be drawn, which contains the material and relevant clauses of the first and original contract drawn December 19th, 1899; that the party of the first part, Mrs. Harriet G. McVicker, being aware that some unscrupulous persons have conspired to ruin the doctor's good reputation and business, willingly and unhesitatingly causes the change in signature; that the party of the first part, Mrs. Harriet G. McVicker, was necessitated to have Hon. William E. Hughes to call at her home and investigate the legal aspect of the terrible and cruel conspiracy against Dr. Zeigler, led by Mr. L. D. Condee, Miss Jennie Boydston, Mrs. William Cox, Mr. George Graves, Mrs. Mack, with an eye singled to have Mrs. Harriet G. McVicker, party of the first part, to discontinue the services of the party of the second part, L. C. H. E. Zeigler, M.D.; that the party of the first part, Mrs. Harriet G. McVicker, had letters presented to her purporting to be from certain individuals, which, when thoroughly scrutinized and their contents carefully questioned of Mr. L. D. Condee by Hon. William E. Hughes, it was deduced by Mr. Condee's own confession that they had been forged and not written by the persons whom he at first declared had written them and delivered same in person.

"To the party of the first part, Mrs. Harriet G. McVicker, to have discontinued the professional services of the party of the second part, L. C. H. E. Zeigler, M.D., would have been equivalent to the canceling of the original contract existing between first and second parties, which is hereto attached, and for which result each of these persons did wrongfully, cruelly conspire. Knowing this by confession from Mr. Condee, also by letter received from him, the party of the first part, Mrs. Harriet G. McVicker, for truth, justice and right has made the second contract in order to avoid the underhandedness of these unscrupulous persons.

"Persons that the party of the first part have conversed with in reference to this matter, are: Mr. William E. Hughes, Rev. W. F. Black, Mr. N. E. Pearse, Mrs. N. E. Pearse, Mrs. J. I. Case, Mr. Emil Linder, Mr. James McInerny.

CONTRACT.

"That the party of the first part, Mrs. Harriet G. McVicker, does enter into an agreement and contract for the professional services to be rendered by the party of the second part, L. C. H. E. Zeigler, M.D., at any time or place, during any spell of indisposition which I may be subjected to during the remainder of my natural lifetime; that in the event of sickness such methods are to be employed or adopted as seem best and most expedient; all medicines or other paraphernalia necessary to the discharge of duties in cases of indisposition are to be provided by Dr. Zeigler;

that when the critical moment comes when it is thought that I may pass out, Dr. Zeigler may call the physician or physicians as his judgment may dictate; that the sum which I voluntarily contract to pay for the services thus rendered is to be $100,000, (one hundred thousand dollars,) payable immediately or as soon as possible by my estate, which I leave in trust with the Illinois Trust and Savings Bank.

"In witness thereof the parties hereto have set their hands and seals July 24th, 1901."

It is uncontradicted that from the time of the execution of the first contract until the death of Mrs. McVicker at Pasadena, California, August 25, 1904, the appellant attended her constantly, reserving for her exclusively, before going to California, his time from eight o'clock P. M. to eight o'clock A. M. of each day, and giving her the right to demand his attention at all other times to the exclusion of his other patients. In October, 1900, Mrs. McVicker removed from her residence in Chicago to the Lexington Hotel, and at her request Dr. Zeigler took up his residence there also. In April, 1904, she went to California, accompanied by the doctor, and remained there until the time of her death. A number of witnesses testified that Mrs. McVicker had stated that in order to induce Dr. Zeigler to go with her to California she had agreed to pay him $5000 per annum and $5000 for expenses in addition to her written contract. This oral agreement was the basis of items 2 and 3 of the claim. After the execution of the first contract, on December 19, 1899, Mrs. McVicker talked with a great many of her friends about the contract and the satisfactory results appellant was accomplishing by his treatment. Prior to that time she had been treated by various eminent physicians, and, according to her oft repeated statements, with but little success. She repeatedly referred to her contract with appellant when talking to her friends and stated many times that he had earned the amount agreed to be paid. She gave or offered to him on several occasions large sums of money or checks for large sums in

addition to and independent of the contract, but these were all either refused or returned. On October 29, 1903, in the presence of Linder and his wife, she offered appellant $100,000 in bank certificates of deposit as in full payment of the contract, stating that she did so for the reason she feared he might have trouble about it after her death. Appellant refused the certificates on the ground that payment at that time would not be in accordance with the contract. She afterwards expressed regret to a number of her friends that the doctor had thus declined to accept payment under the contract during her lifetime. Mrs. McVicker was a cultured and educated woman, and it is uncontroverted that her mental faculties were unimpaired up until the time of her death. She had large business interests and gave them her personal attention and supervision. She is described by all the witnesses who testified on that point as shrewd and as having exceptional business qualifications, as a woman of strong mentality, not easily influenced and accustomed to having her own way. Her only heirs-at-law were two nieces,—one, Minnie Effey, the daughter of a deceased brother, and the other, Clara Belle Game, the daughter of a deceased sister. It is stipulated that at the time of her death her estate consisted of property of the value of $270,000. By her last will and testament she made various small bequests amounting to about the sum of $22,000, and devised the residue of her estate in trust to the Illinois Trust and Savings Bank, directing that it pay three-fourths of the net revenue therefrom semi-annually to one Horace McVicker and the remaining one-fourth semi-annually to her niece Clara Belle Game, who resided in San Francisco, California. The will further provided that upon the death of Horace McVicker three-fourths of the residue of the estate should be paid to his heirs-at-law, and upon the death of Clara Belle Game one-fourth of the residue was to be paid to her children then living. No provision whatever was made in the will for the niece Minnie Effey.

The record, abstracts and briefs are all quite voluminous, and both appellant and appellee have presented a large number of points in support of their contentions. We have carefully considered all the points raised and the authorities cited, and will discuss briefly those which in our judgment are controlling in the matters in controversy.

It is contended on the part of appellant that this is a suit at law and for that reason the facts are not open to review in this court, while the appellee insists that as the probate court, and the circuit court upon appeal, were required to exercise equitable jurisdiction and to resort to equitable procedure, the case partakes of the nature of a chancery proceeding, and this court should review the facts as well as the law. In *Grier* v. *Cable,* 159 Ill. 29, we held that the prosecution of a claim against an estate in the probate court was in no proper sense a suit or proceeding at law or in chancery but was purely a statutory proceeding, and for that reason an appeal from the judgment of the probate court allowing or disallowing the claim did not lie, under the statute, to the Appellate Court but to the circuit court. Upon final appeal to this court from the judgment of the circuit court allowing or disallowing a claim against an estate, this court will examine into the nature of the claim and the defenses to it, for the purpose of determining whether it has the power to review the facts. In a claim based on purely legal demands, and where there are no equitable defenses and the probate court is not required to exercise its chancery powers, the judgment of the Appellate Court is conclusive upon this court as to the controverted facts in the case, but in the adjustment of claims where the probate court exercises an equitable jurisdiction and resorts to equitable procedure, upon an appeal to this court it is our duty to examine and determine questions of fact as well as of law. (*Hobbs* v. *Ferguson's Estate,* 100 Ill. 232; *Belleville Savings Bank* v. *Bornman,* 124 id. 200; *Cheney* v. *Roodhouse,* 135 id. 257; *Bliss* v. *Seaman,*

165 id. 422; *Henry* v. *Caruthers,* 196 id. 136; *Starrett* v. *Brosseau,* 208 id. 408; *Schell* v. *Weaver,* 225 id. 159; *Clemens* v. *Crane,* 234 id. 215.) In this case the claim filed was for a legal demand, and as no defense was made which could not have been interposed in a suit at law, the probate court did not exercise its equitable jurisdiction. The facts, therefore, are not reviewable here. This question is not of controlling importance in this case, for the reason that there is no conflict in the evidence on any material point. In fact, appellee made but little proof, and none whatever upon any material question of fact involved, but relied wholly upon questions of law. Upon the only questions of fact necessary to be proven to sustain the claim, the evidence of appellant stands uncontradicted and tends to support the claim.

In its judgment the Appellate Court found as a question of fact that upon the allegations and proofs in the record the contracts of December 19, 1899, and of July 24, 1901, are void, as being against sound public policy. This finding is not one of fact but of law. A similar finding was made by the Appellate Court in *Brush* v. *City of Carbondale,* 229 Ill. 144, and in passing upon that question we said: "The view of the Appellate Court seems to have been that the question whether the contract alleged in the declaration was contrary to public policy and void was one of fact. But that is not so." In the *Brush case* the contract was oral, but as the facts were conceded, its interpretation, as in the case of written contracts, became a question of law for the court. In this case the contract is a written one, and its construction does not depend upon any extrinsic fact. Its interpretation, therefore, is a question of law.

The position of appellee is that the original and confirmatory contracts entered into between Mrs. McVicker and Dr. Zeigler are void, as against public policy, for the reasons, first, that they furnish an incentive to the commis-

sion of a crime; and second, that they substantially form a wager on the length and continuance of the life of Mrs. McVicker. There is no precise definition of public policy, and consequently no absolute rule by which a contract can be measured or tested to determine whether or not it is contrary to public policy. Each case, as it arises, must be judged and determined according to its own peculiar circumstances. The public policy of the State or of the nation is to be found in its constitution and its statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of the government officials. (*Bell* v. *Farwell,* 176 Ill. 489; *Harding* v. *American Glucose Co.* 182 id. 551; *Brush* v. *City of Carbondale, supra; Hartford Fire Ins. Co.* v. *Chicago, Milwaukee and St. Paul Railroad Co.* 70 Fed. Rep. 20; *Vidal* v. *Girard's Exrs.* 2 How. 127; *United States* v. *Trans-Missouri Freight Ass'n,* 166 U. S. 290.) Courts will not look to other sources to determine the public policy of a State. As was said in *Hartford Fire Ins. Co.* v. *Chicago, Milwaukee and St. Paul Railroad Co. supra:* "The public policy of a State or nation must be determined by its constitution, laws and judicial decisions,—not by the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public."

That the contract in question does not, in any of its expressed provisions, violate the constitution or any statute of this State does not admit of argument. The making of such a contract is not prohibited either by the express terms or any fair implication of the constitution or of any statute of the State. Neither do we deem it to be contrary to the judicial decisions of the State. The laws and the public policy of the State permit and require the utmost freedom of contracting between competent parties, and it is only when a contract expressly contravenes the law or the known public policy of the State that courts will hold it void.

245—13

It is urged that this contract is void chiefly for the reason that it furnished an incentive to appellant to shorten the life of Mrs. McVicker by neglect or improper treatment or by the commission of the crime of murder. Each argument made by appellee in support of this contention involves a breach of the contract and is not founded on the performance of it. It cannot be seriously contended but that, in order to comply with the terms of this contract and be entitled to receive the benefits of it, the appellant was bound to give Mrs. McVicker the best treatment within his power and skill and to prolong her life as long as possible. Should he fail to do this, either through neglect, by willfully treating her in an improper manner or by directly causing her death, appellant would be unable to recover upon the contract. There can be no doubt that a contract to commit murder or any other crime, or a contract to give a reward to one for the commission of a crime, is void, as against public policy. This contract does not contemplate the commission of a crime or the doing of anything which is unlawful or contrary to good public morals. Even if it be conceded that the contract, under its terms, offered some incentive to appellant to commit a crime, that would not necessarily render it void. "Where the parties to a contract do not contemplate the commission of any crime, the fact that the contract offers an incentive to do so will not render it illegal. This is well shown in contracts in which the benefit to accrue to one of the parties is conditioned on the death of the other party, thereby giving the former an interest in the death of the latter." (15 Am. & Eng. Ency. of Law,—2d ed.—938.) "That it is competent for a party to stipulate for the disposition of his property at the time of his decease is too well settled to admit of doubt or question." (*Jenkins* v. *Stetson,* 9 Allen, 128; *Howe* v. *Watson,* 179 Mass. 30.) "It is not contended that a contract, founded on a sufficient consideration, to make a certain provision by will for a

particular person is invalid in law.    The contrary is well settled."    (*Wellington* v. *Apthorp,* 145 Mass. 69.)    "The owner of property may make a valid enforceable contract binding himself not to dispose of his property by will and binding himself to permit his possessions to descend according to the laws of intestacy."    *Jones* v. *Abbott,* 228 Ill. 34.

There have been numerous decisions involving contracts entered into whereby one party has agreed that upon his death his property, or certain specific portions of it, shall go to and become the property of the other party for considerations named, being usually the caring for and maintaining of the grantor during his or her lifetime by the other party, or whereby one party conveyed his property to the other for the consideration of the care, maintenance and support of the grantor during the remainder of his or her natural life, and these contracts have universally been held to be valid and binding.    In every such case the incentive to hasten the death of the grantor was present to the same extent as in this case.    While such contracts are usually made between parent and child or between others closely related by blood ties, they have been frequently made between persons who bear no blood relationship to one another, and no distinction has been made by the courts on that ground.    In a recent decision this court held that complainant was entitled to a decree for specific performance against the administrator and heirs of a deceased person who had in his lifetime contracted with complainant, orally, that if she would take care of him and provide him with a home as long as he lived he would give her the house and lot which she was then occupying and which belonged to him, the contract having been fully performed by her upon the death of the promisor.    In that case there was no blood or marriage relationship between the contracting parties.    (*Anderson* v. *Manners,* 243 Ill. 405.)    In this State, litigation growing out of the execution of such con-

tracts has usually arisen on account of the non-performance of the grantee, but in no case has the validity of such contracts been questioned and their validity has in every instance been recognized by this court. (*Frazier* v. *Miller,* 16 Ill. 48; *Oard* v. *Oard,* 59 id. 46; *Jones* v. *Neely,* 72 id. 449; *Kusch* v. *Kusch,* 143 id. 353; *Cooper* v. *Gum,* 152 id. 471; *McClelland* v. *McClelland,* 176 id. 83; *Stebbins* v. *Petty,* 209 id. 291; *Fabrice* v. *Von der Brelie,* 190 id. 460; *Calkins* v. *Calkins,* 220 id. 111.) It is, therefore, not contrary to public policy to contract to devise property or to refrain from devising property for a consideration, or to contract that property shall pass at once or at the decease of the grantor to the other party to the contract in consideration of the support, care and maintenance of the grantor during the remainder of his natural life by the other contracting party. So far as the question of an incentive to the commission of a crime is concerned, we perceive no difference between such contracts and the one here involved.

The contention that this contract is void for the reason that it is a wagering contract is not well founded. As we view it, it has none of the elements which would bring it within the designation of a wagering contract. There is a sufficient consideration moving between the parties to support it.

It is contended further by appellee that the fiduciary relation of physician and patient having existed between appellant and Mrs. McVicker at the time of the execution of the original and supplemental contracts, they are presumptively fraudulent and *prima facie* void. This is the defense which appellee claims required the probate court to exercise its equitable powers. While this contention would constitute grounds upon which to seek affirmative relief in equity, it is one which may be interposed as a defense in an action at law, and when so interposed its effect is merely to shift the burden of proof. So in this case, the interposition of this defense made it necessary for appellant to

show, by a preponderance of the evidence, that Mrs. Mc-Vicker entered into this transaction voluntarily, deliberately and advisedly, knowing its nature and effect, and that her consent was not obtained by reason of the power and influence to which the relationship between herself and appellant might be supposed to give rise.

Appellee contends that the burden was not only upon appellant to prove the fairness of the contract and that it was entered into voluntarily and advisedly by Mrs. Mc-Vicker, but that it devolved upon him also to show, by a preponderance of the evidence, that she had independent and competent advice before she executed the contract. While the burden was upon appellant, by reason of the confidential relations existing between him and Mrs. McVicker, to show by competent proof that the contracts were not executed as the result of undue influence, he is not held to the strict rule contended for by appellee. "To render such a transaction valid it is only necessary to show that the other party had competent and disinterested advice, *or* that he performed the act or entered into the transaction voluntarily, deliberately and advisedly, knowing its nature and effect, and that his consent was not obtained by reason of the power and influence to which the relation might be supposed to give rise." (*Uhlich* v. *Muhlke*, 61 Ill. 499; *Herr* v. *Payson*, 157 id. 244.) The jury was instructed upon this theory and the instructions so given were proper.

It is contended by appellee that the trial court erred in allowing depositions of witnesses taken on the part of appellant to be read as evidence on the trial, for the reason, as it claims, that there is no authority, under the statute, for the taking of depositions in the probate court in the matter of any claim there pending. The act on evidence and depositions provides for the taking of depositions of witnesses in suits at law and in suits in chancery. Appellee, relying upon the doctrine as laid down by this court in *Grier* v. *Cable, supra,* insists that as this proceeding is

neither a suit at law or in chancery, the taking of a deposition in the same is not authorized. Section 60 of the Administration act provides that contested claims against the estate of a decedent shall be "tried and determined as other suits at law." This provision, when construed together with the provisions of the act on evidence and depositions, permits of the taking of depositions in claims filed against estates of decedents in the probate court. The appellee is in no position to complain of the action of the court in this regard in any event, as it offered the deposition of a witness on its part and was allowed to read the same in evidence.

Appellee complains of the action of the court in refusing to give certain instructions asked in its behalf and in giving other instructions asked on the part of appellant. The questions raised on a number of these instructions have been already passed upon in the discussion of other questions involved and it will not be necessary to deal with them further. Matters raised by some of them, however, have not been noted. About four months before her death Mrs. McVicker, accompanied by the appellant, went to the State of California, where she died. Under a special arrangement made with Mrs. McVicker appellant accompanied her to California and attended her there. It is conceded that appellant was not licensed to practice medicine in the State of California, and appellee insists that for that reason he is not entitled to recover anything for his services performed in the State of California, whether rendered pursuant to a contract or otherwise, and that the jury should have been so instructed. Appellant, when in attendance upon Mrs. McVicker, under the terms of his contract, while she was sojourning temporarily in the State of California, was licensed to practice medicine in the State of Illinois, and, so far as the determination of the questions involved here is concerned, it is immaterial whether he had authority to practice medicine in the State of California, or

whether the medical attention he gave to Mrs. McVicker while in the State of California was in violation of the laws of that State. He was not engaged in the general practice of medicine in California but was simply in attendance upon his patient, who was a resident of Illinois, while she was temporarily in California. The instructions asked on the part of appellee on this question were properly refused.

It is also contended by appellee that appellant violated the terms of his contract in refusing to accompany Mrs. McVicker to California in 1903, and for that reason is not entitled to recover on the contract. A fair and reasonable interpretation of the contract would not require appellant to accompany Mrs. McVicker to any place she might see fit to go temporarily, for the purpose of treating her professionally, but only bound him to treat her at her permanent place of abode. That the parties so understood the terms of the contract is evidenced by the fact that when appellant did accompany her to California in 1904 it was under a special arrangement whereby he was to receive extra compensation for doing so.

Under the view we take of the case it is not necessary to pass upon the question of the right of appellant to recover upon a *quantum meruit.*

Objections are urged by appellee to the action of the court in excluding and admitting evidence, but upon examination of the record we do not find any reversible error in that regard. From a consideration of the whole record we are of the opinion that the contract entered into by Mrs. McVicker and appellant is a valid and binding one. Appellant having fully performed it on his part, is entitled to an affirmance of the judgment of the circuit court.

For the reasons assigned the judgment of the Appellate Court is reversed and the judgment of the circuit court affirmed.

*Judgment reversed.*