---

(No. 12418.—Appellate Court reversed; municipal court affirmed.)
LUIGI RUSSO FU AGATINO, Plaintiff in Error, *vs.* L. GINOC-
CHIO *et al.* Defendants in Error.

*Opinion filed June 18, 1919.*

1. CONTRACTS—*when existence of contract is question of law.*
Where there is no dispute concerning the essential facts involved in the making of an alleged agreement the question of the existence of a contract between the parties is one of law which the Supreme Court may review, though the Appellate Court finds, as a fact, that no contract existed.

2. SAME—*minds of the parties must meet to make a contract.*
A meeting of the minds of parties to a contract as to its terms and conditions is essential to the existence of the contract.

3. SAME—*when contract for importation is complete.* Where the only misunderstanding of the parties to a contract for the importation of almonds is as to the time of delivery, the vendees interpreting the term "shipment September" to mean the first half of September, if the vendor, upon being notified of such interpretation by cable, answers "I confirm," the contract is completed, although the vendor afterward wrote his agent a letter, which was not communicated to the vendees, expressing dissatisfaction with the terms of shipment.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON, (ED-WARD R. JOHNSTON, of counsel,) for plaintiff in error.

CULVER, ANDREWS, KING & STITT, for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error filed his claim in the municipal court of Chicago against defendants in error on three contracts for the sale of almonds. Judgment was secured for the claim in the municipal court in the sum of $2251.75. On review the Appellate Court affirmed the judgment of the municipal court as to two of said contracts and entered judgment on the same for $803.55 and reversed the judgment of the municipal court as to the remaining contract, with a finding of facts to the effect that no contract existed between the parties. The cause comes here on *certiorari* to the Appellate Court to review the judgment of that court concerning the third alleged contract. As that contract is the only one in issue in this court, only such portion of the statement of plaintiff's claim and facts relating to said contract need be considered.

The alleged contract was for the purchase and sale of 150 bales of P. & G. almonds at 120 shillings per hundred pounds. Plaintiff in error was represented in Chicago by Harold B. Pinder for the purpose of soliciting orders from Chicago importers. Offers received by Pinder were by him cabled to his principal in Sicily, and in case the terms of sale were agreed upon by the purchaser and his principal, Pinder confirmed the deal by a written memorandum of the terms of sale, one copy of which was sent to the purchaser, one to his principal and one was kept on file in

Pinder's office. In January, 1914, Pinder called on Costa, a member of the firm of Ginocchio, Costa & Co., defendants in error, for the purpose of securing an order for Sicilian almonds to be shipped during the following September or October. Costa asked for quotations on P. & G. almonds to be shipped during the first half of September, 1914. On January 31, 1914, Pinder wired his principal, "Lowest 150 bales Palma new crop, first half of September, direct steamer." On the same day Pinder received a cable from his principal, "126 September," which was immediately reported to Costa, who objected to the price, stating, in substance, that he already had an offer from a seller in Hamburg, Germany, quoting the same at 120. Thereupon Pinder cabled his principal on the 31st as follows: "Hamburg sold 120; business possible same price; telegram." On the second or third of February Pinder received a cable from his principal as follows: "I accept 120 September." Shortly after the receipt of this cable Pinder called at Costa's office and acquainted him with the contents of the cable, upon the receipt of which knowledge Costa stated that he would take 150 bales. Thereupon Pinder sent his principal a cable as follows: "Sold Costa 150 Palma new crop, September, 120, direct steamer." Following this last message Pinder made out in triplicate a written confirmation of the sale, sending a copy to his principal and the original to the defendants in error, who produced said original on the hearing in the trial court, which is as follows:

"Sold to Ginocchio, Costa & Co., Chicago, Ill., for account of Luigi Russo fu Agatino, Catania, Sicily, 150x220 lb. bales sweet shelled P. & G. almonds, Cat brand, 1914 crop, at 120/- per cwt., gross for net C. & F. per direct steamer to New York. Terms: Payment at 90 days against L/ credit on London bank, shipment September."

Some time in the month of March after the delivery of this statement Pinder called upon Costa and suggested that as the market on almonds was becoming bad, defendants in error should re-sell the almonds theretofore sold to them

for September delivery and save loss, whereupon Costa replied that his order was for the first half of September. Pinder called his attention to the order, whereupon Costa stated that if the order went in for September delivery it was wrong, as he had not purchased upon that basis; that his contract was for the first half of September. Thereupon Pinder cabled plaintiff in error that defendants in error understood shipment not later than September 16 instead of September delivery, and asked confirmation. The plaintiff in error confirmed the amendment of these terms by cable, and later wrote Pinder indicating that he (Pinder) would have to stand the loss of such change in the contract as such broker.

It is contended by plaintiff in error that the facts are undisputed in this case, and that whether or not such facts establish a contract described in the amended statement of claim for the sale of the goods in question is a question of law. It is contended by defendants in error that the facts in question are disputed and therefore the parties hereto are concluded by the judgment of the Appellate Court; that the minds of the parties did not meet on the item described in the original claim or in the claim as amended; that the defendants in error had been led to believe that the contract had been withdrawn by the plaintiff in error, and therefore they were justified in refusing to carry out the same.

Upon reading the testimony in the record we find no dispute concerning the essential facts in this case. The question, therefore, whether or not they show the existence of a contract between the parties is a question of law. This court has jurisdiction to review questions of law on writ of error to the Appellate Court even though that court makes a finding of facts, where such facts are not disputed. The question, under such circumstances, is one of correct application of the law to the undisputed facts. *Zeigler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180; *Brush* v. *City of Carbondale,* 229 id. 144.

The only question in this case is whether the minds of the parties hereto met in an agreement on the terms and conditions of a contract for the purchase and sale of 150 bales of almonds. This is essential to the existence of any contract. (*Weeks* v. *Chicago and Northwestern Railway Co.* 198 Ill. 551; *Mozeiko* v. *Lehigh Valley Transportation Co.* 235 id. 324; *Stanton* v. *Chicago City Railway Co.* 283 id. 256.) We are of the opinion that the minds of the parties did meet and that a contract was made between them. It appears from the evidence that at the time of the original offer of 150 bales of almonds at "120" the vendor understood the contract to be for "September delivery," which, as explained in the evidence, means in that business a delivery at any time in the month of September, while the vendee claimed that such delivery was to be made during the first half of September. It is evident that at the time the sales memorandum was delivered to defendants in error the minds of the parties had not met on the matter of delivery, which appears to have been one of the conditions of the contract. So the matter stood until the latter part of March of the same year, when the broker, Pinder, called upon defendant in error Costa to suggest to him that the market for almonds having weakened, they ought to re-sell their contract with plaintiff in error and avoid loss. It at this time became known to the broker that Costa understood that the shipment of the almonds was to be made during the first half of the month of September. Pinder, a day or two thereafter, cabled the plaintiff in error advising a modification of the contract to conform to the wishes of Costa, to which plaintiff in error replied by cable, "I confirm." Pinder, upon receipt of this cablegram, went to defendants in error and there showed Costa the cablegram and told him what he had cabled the plaintiff in error and that the cablegram was in reply and agreement thereto, to which Costa replied, "All right," or words to that effect. It is evident that at that time there was a meeting of the minds

of the parties on the only difference between them,—that of delivery,—and that the contract was then and there completed. It appears that nothing further was said about the matter until August 13 following, when plaintiff in error wrote to defendants in error asking for the name of the London firm with which defendants in error would open letters of credit for the 150 bales of almonds. On September 2 defendants in error notified plaintiff in error that "disturbed banking conditions" prevented them opening letters of credit, and eight days later, in a letter inferring the same reason, canceled "the entire business." There was nothing in either of these communications indicating that the terms had not been agreed upon. The reason assigned was entirely outside the contract. These facts also tend to show that a valid contract existed between the parties.

It is contended that as the plaintiff in error thereafter wrote to Pinder expressing dissatisfaction with the shipment terms of the contract, it showed that he did not agree concerning such shipment and that the minds of the parties did not meet concerning that matter. The clear language of his cablegram in the latter part of March, in reply to that of Pinder advising modification of the contract in that particular and the later assent of Costa thereto, shows that the contract was completed. His letter written later was therefore, at most, but an attempt to break the contract, if it could be even so construed, and since it was not communicated to defendants in error it could not amount to a rescission of the contract. *Roebling's Sons' Co.* v. *Lock Stitch Fence Co.* 130 Ill. 660; *Kadish* v. *Young,* 108 id. 170.

The judgment of the Appellate Court will be reversed and the judgment of the municipal court affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of municipal court affirmed.*