Edgar M. Snow and Andrew A. Brock, Trading as Edgar M. Snow & Company, Appellees, v. Alexander S. Schulman, Appellant.

Gen. No. 35,483.

Opin-
ion filed June 28, 1932.   Rehearing denied July 11, 1932.

MILLER, GORHAM & WALES, for appellant.

TENNEY, HARDING, SHERMAN & ROGERS, for appellees; ROGER SHERMAN and HENRY F. TENNEY, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an appeal from a judgment rendered upon an arbitrator's award finding that Edgar M. Snow & Company, appellee, was entitled to receive $28,000, with interest at five per cent per annum from April 2, 1925, from Alexander S. Schulman, appellant, as a commission for procuring the acceptance of a loan of $800,000, from the New England Mutual Life Insurance Company to the appellant.

After the appellees had sued the appellant for commissions alleged to be due them the parties entered into an arbitration agreement, by the terms of which "1. All questions of law or fact at issue between the parties, as fixed in the pleadings filed in said suit, shall be, and they are hereby, irrevocably submitted to Charles M. Thomson as arbitrator, and the pleadings in such suit and depositions shall be introduced in evidence before the arbitrator. 2. The arbitrator shall hear such evidence and arguments as he may deem necessary to determine the issues raised, he being the sole judge of the admissibility, competency, relevancy, materiality and weight of the evidence, and shall decide such issues and fix the amount, if any, due the plaintiffs in said case. . . . 4. The arbitrator may, on his own motion, and shall, at the request of either party, at any stage of the proceedings, submit any question of law arising in the course of the reference to the opinion of the court, stating the facts upon which the question arises, and such opinion, when given, shall bind the arbitrator in making his award."

The arbitrator selected is a former justice of this court. His able and exhaustive report takes up 41 pages of the abstract of record. To quote from it:

"The plaintiffs, Edgar M. Snow and Andrew A. Brock, are partners engaged in the real estate business under the name and style of Edgar M. Snow & Co. The defendant, Alexander S. Schulman, had undertaken to close his purchase of two contiguous pieces of property on May 15, 1925. These pieces of property are referred to in the testimony as the Bass property located at the northeast corner of Dearborn and Harrison Streets, Chicago, and the Ellsworth property, adjoining the Bass property on the north. In connection with his purchase of those properties the defendant on April 1, 1925 made application in writing to the plaintiffs for a loan of $1,000,000, agreeing therein to pay the plaintiffs a commission of $3\frac{1}{2}$ per cent on the amount of said loan, provided they procured the acceptance of that application. It is the claim of the plaintiffs that they did procure such acceptance by a lender ready, willing and able to make the loan on the terms set out in the application and that therefore they are entitled to the commission stipulated by the terms of the application. Claiming the contrary the defendant resisted payment of the commission which resulted in this suit brought by the plaintiffs against the defendant for its recovery."

It is conceded that the original application was amended by the appellant so that it specified that the amount of the loan was to be $800,000 instead of $1,000,000.

The report of the arbitrator included the following findings:

"On the facts shown by the evidence as set out in the statement heretofore appearing herein and for the reasons given in the foregoing opinion I find:

"1. That the defendant, Alexander S. Schulman, by his application for a loan executed on April 1, 1925, as modified on April 17, 1925, agreed to pay the plaintiffs, Edgar M. Snow and Andrew A. Brock, doing business as Edgar M. Snow & Company, a commission

of 3½ per cent of the amount of the loan, for procuring the acceptance of that application, as so modified, on or before April 28, 1925.

"2. That the undertaking of the plaintiffs was to procure a valid and binding acceptance of such application, within the time stipulated.

"3. That the plaintiffs did procure a valid and binding acceptance of that application by the New England Mutual Life Insurance Company on April 22, 1925, and that such company was at all times ready, willing and able to make said loan.

"4. That such an acceptance by the Insurance Company required the approval of the loan by its Finance Committee.

"5. That the Finance Committee did properly approve the loan applied for by the defendant on April 22, 1925.

"6. That the wording of the motion voted by the Finance Committee did not purport to cover the details or terms of the application and that it was not necessary that it should.

"7. That the record of the vote taken by the Finance Committee in approval of the defendant's application was not inconsistent with or contrary to any of the terms of the defendant's application.

"8. That by the terms of the defendant's application the lender was to be allowed a reasonable time for examination of the abstracts of title to the property being offered as security for the loan.

"9. That the abstracts of title in question were delivered to the plaintiffs and by them to counsel for the lender on or about April 23, 1925.

"10. That memoranda setting out divers and sundry matters subject to which the titles were found to be in certain designated parties were submitted by counsel for the lender to counsel for the defendant on April 29, 1925.

"11. That the only serious or material objection to the titles as found by counsel for the lender was the one involving the old lease on the Bass property.

"12. That this item was waived by the general counsel representing the lender on May 8, 1925, and the defendant was advised to that effect on that date.

"13. That on the same day counsel for the lender advised counsel for the defendant that he was satisfied there was nothing in the remaining items which could not be taken care of and that he would be glad to take up on that day the points necessary for clearing up the remaining items and closing.

"14. That the time taken for examination of the titles and the consideration of the items referred to, subject to which the titles were found to be in certain designated parties, being from April 22 to May 8, 1925, was not an unreasonable time for such examination and consideration.

"15. That the plaintiffs are entitled to be paid the commission stipulated in the application for the loan as executed by the defendant amounting to $3\frac{1}{2}$ per cent on the amount of the loan which was $800,000."

After the arbitrator had made his report the publication of the award was postponed to enable the parties to submit to the court "any question or questions of law involved herein, should they choose so to do." Thereafter four questions of law were submitted to the court by the appellant. The questions and the court's answers to the same are as follows:

"1. Was the plaintiff required, in order to earn said commission, to procure within the time limited a legally valid acceptance of defendant's application, for breach of which by the acceptor of the application an action by defendant would lie?

"Yes, the arbitrator has specifically ruled to such effect in his opinion at pages 24–25.

"2. Did the action of the Finance Committee constitute an acceptance of defendant's application?

"No. But in the opinion of the court, it was not necessary to a binding acceptance by the Insurance Company, of the defendant's application, that the action of the Finance Committee constitute such an acceptance. In the opinion of the court the action of the Finance Committee constituted an approval of the proposed loan to the defendant, which was all that was necessary so far as the Finance Committee was concerned, and, following that, in the opinion of the court there was a valid and binding acceptance by the Insurance Company of the defendant's application for the loan, as found by the arbitrator in his opinion, at page 27.

"3. Since the lender—the acceptor of the application—was by the terms of the application to loan a part of the amount applied for more than one year after the time limited for securing the acceptance, was the acceptance required to be in writing signed by the acceptor of the application or by some person thereunto by the acceptor lawfully authorized?

"No. But in the opinion of the court this question is entirely immaterial in view of the fact that the arbitrator has found, at page 27 of his opinion, that a valid and binding acceptance of the application for the loan was made in writing, which finding the court approves.

"4. Defendant having no information either at the time he was notified by plaintiff that his application had been accepted by said Insurance Company, or at the time said loan fell through, or until the taking of the depositions after suit begun on the above claim, of the above facts as to the action of the Finance Committee of the Insurance Company and the extent of its authority in the making of loans and the acceptance of applications therefor, is defendant now barred from

claiming that the New England Mutual Life Insurance Company never accepted all the material terms of his application; or that its acceptance was not a legally valid one; or that such acceptance not being by a writing signed by the insurance company or by its duly authorized agent was not valid?

"No. The defendant is not barred from making the claims referred to, but the arbitrator has made findings that none of the claims are tenable, and the court approves those findings.

"And the court having stated its opinion with respect to the said propositions of law so submitted to the court by counsel for the defendant,

"It Is Ordered, that the opinion of this court as so stated shall bind the arbitrator in making his award herein as provided in the agreement of the parties hereinabove referred to."

After the court had considered the above questions and "had passed upon them, but had not entered the order," the arbitrator, at the request of appellant, submitted to the court a fifth question, as follows:

"5. Did the letter of Wallace D. Dexter, Jr., to John Jeffries and Sons, dated April 22, 1925, constitute an acceptance of defendant's application?"

The court refused to pass upon this question. The arbitrator then made his award, in which he stated "that the facts established by the evidence" are "*as specifically set out in the findings.*"

The appellant contends: (a) "A written acceptance of the contract was necessary because it could not be completely performed within one year"; (b) "Dexter's letter of April 22, 1925, was not a valid and binding acceptance of Schulman's application by an authorized agent"; and (c) "The memorandum of the action of the finance committee of April 22, 1925, was not in itself a sufficient writing to satisfy the Statute of Frauds." The appellant thus states his position:

"That a valid and authorized written acceptance by the Insurance Company was necessary and that the Finance Committee alone was authorized to make it; that neither Dexter's letter nor the minutes of the Committee's action, separately or combined, could or did constitute such an acceptance; *and that, these matters being covered by our propositions of law, the erroneous answers of the court constituted material error and the judgment should be reversed.*" (Italics ours.) In his reply brief the appellant states his position as follows: "These positions were incorporated in the propositions of law submitted to the court in accordance with the express right reserved in the arbitration agreement, and also given by the statute, *and the decisions of the court adverse to Schulman on these questions, and decisive of the case, are the errors now complained of.*" (Italics ours.)

"Inasmuch as the arbitration of controversies avoids the formalities, delay and expense of litigation in court, the courts, speaking from an economic standpoint, have approved and recommended that method of settlement. (*Gerrish v. Ayers,* 3 Scam. 245; *Merritt v. Merritt,* 11 Ill. 565; *Haywood v. Harmon,* 17 id. 477; *Podolsky v. Raskin,* 294 id. 443; *Ballance v. Underhill, supra.*)" (*Cocalis v. Nazlides,* 308 Ill. 152, 156.) "The object of arbitration is to avoid the formalities, delay and expense of litigation in court, and the decision of the arbitrators, acting within the scope of their authority under the submission agreement, is conclusive on the parties upon matters of law and fact. (*Boston Water Power Co. v. Gray,* 6 Metc. 131; *Hewitt v. Craig,* 86 Ky. 23; *Thornton v. McCormick,* 75 Iowa 285.) . . . The rule is that if an award is in conformity with the general submission and no fraud or mistake appears on its face it will not be interfered with or set aside by a court for errors either of law or fact. (*White Star Mining Co. v. Hultberg, supra.*)" (*Podol-*

*sky v. Raskin,* 294 Ill. 443. See also *White Star Mining Co. v. Hultberg,* 220 Ill. 578, 601.) The appellant contends that in *Podolsky v. Raskin,* and other cases akin to it, no submission of questions of law, as provided in the statute, was made to the court, and therefore the decisions of the arbitrators in those cases, on both questions of law and fact, were conclusive, but that in the instant case the right to have the trial court pass upon questions of law was reserved by the appellant and the cases cited have no bearing upon the instant one. Even if this contention were a meritorious one, nevertheless, the appellant does not cite a single case that supports his argument that if the trial court erred in his answers to several of the questions submitted by the appellant that fact alone would require a reversal of the judgment of the circuit court and a setting aside of the award because the answers were adverse to the appellant. Appellant cites such cases as *Russo v. Ginocchio,* 288 Ill. 470, wherein the court held that where there was no dispute concerning the essential facts involved in the making of an alleged contract, the question as to whether or not the facts show the existence of a contract between the parties is a question of law. That case, as well as several others cited, was an ordinary suit at law and has no bearing upon the instant contention.

Sec. 1, par. 1, ch. 10, Cahill's Ill. Rev. St. provides: " . . . and may, in such submission, agree that any court of competent jurisdiction, or any court therein named (provided it is of competent jurisdiction) may pass upon any questions of law arising in such arbitration proceedings. . . ." Sec. 6, par. 6, provides: " . . . The arbitrators may, of their own motion and shall by request of a party (a) at any stage of the proceedings, submit any question of law arising in the course of the reference for the opinion of the court, stating the facts upon which the question arises, and such opinion when given shall bind the arbitrators in

the making of their award; . . . ." Sec. 11, par. 11, provides: "Award, when set aside.] § 11. If any legal defects shall appear in the award or other proceedings, *or if it shall appear that the award is not sustainable under the opinions of the court upon questions of law under section 6 of this Act,* the court may set aside such award, or remit the matters contained in the said award to the reconsideration of the said arbitrators; or, if it shall appear, on oath or affirmation that said award was obtained by fraud, corruption or other undue means, or that such arbitrators misbehaved, said court may set aside such award." In *Chandler v. Gay,* Beecher's Breese 88, it was held that the circuit court could only set aside an award on grounds expressly stated in the statute and that the same rule governed the Supreme Court in passing upon a judgment entered upon an award. "The opinion of the arbitrators which binds the parties is that which they have expressed by their award. Judgments of courts do not depend upon the opinions rendered in the courts, neither can the validity of awards be made to depend upon the soundness of the opinions of the arbitrators not shown by the awards." (*White Star Mining Co. v. Hultberg, supra,* p. 612.) In the instant case, as no legal defects appear in the award or other proceedings, and as there was no claim of fraud, etc., it was the plain duty of the trial court to enter judgment upon the award unless it appeared to the court that the award was not sustainable under the opinion of the court on the questions of law submitted to him. The trial court, by entering judgment, held, in effect, that the award was sustainable "under the opinions of the court upon questions of law under section 6." We approve of his action in that regard. The appellant does not claim that mistakes or errors are apparent on the face of the award and he asks us to reverse the instant judgment upon the sole ground that the trial court erred in his answers to several of

the questions of law submitted to him by the appellant. The arbitrator states in the award that he makes the award upon the facts "specifically set out in the findings," and it is clear that no mistakes of fact or law, that would warrant the setting aside of the award under section 11, are apparent upon the face of the award or the findings, but the appellant insists that an examination of the evidence will disclose that certain findings of fact were not justified under the undisputed proof. It is a sufficient answer to this contention to say that we have no right to look into the evidence for the purpose of correcting alleged errors of judgment of the arbitrator. (See *White Star Mining Co. v. Hultberg, supra,* p. 608.) Unless there be something on the face of an award to show that the arbitrator has proceeded on grounds which are not sustainable in point of law, an objection to it will not be entertained. (Ib. p. 610.) We may state, however, that we are satisfied, after a careful study of the record, that the findings of fact of the arbitrator are fully sustained by the proof. We may add that even if it could be assumed that the trial court erred in his answers to any of the questions, it would avail the appellant nothing, for the reason that the award of the arbitrator, which states "that the facts established by the evidence" are *"as specifically set out in the findings,"* upon its face, is unassailable, and therefore the trial court had no right to set it aside, nor have we.

The arbitrator in the instant case is learned in the law, and, unlike most arbitrators, required no assistance on questions of law from the trial court, and it may be presumed that the parties selected him because of his outstanding qualifications. After evidence on both sides had been closed, and the arbitrator was about to take the matter under advisement, the appellant submitted to the arbitrator for his determination four written propositions of law, and both parties sub-

mitted written briefs to him. In the opinion filed by the arbitrator he not only passed upon questions of fact but upon the propositions of law submitted to him. After the arbitrator made his report and his findings, the appellant then went before the trial court to submit the questions of law, heretofore quoted, and his sole contention here is that the trial court erred in his answers to the questions. Until the arbitrator made his report and findings the appellant did not ask that any questions of law be submitted to the trial court. Under the procedure followed, the appellant, in a formal manner, submitted to the arbitrator for his determination the same propositions of law he afterwards submitted to the trial court, and we question if the appellant would have had just cause for complaint had the arbitrator refused to submit to the trial court the questions of law. Under the arbitration agreement the parties were not compelled to submit questions of law to the trial court, and they had the right to allow the arbitrator to determine questions of law. Query: Had the appellant the right to treat the arbitrator as a trier of questions of law, until the latter had rendered his decision, and then, because the decision was against him, submit to the trial court the same questions of law that he had formally asked the arbitrator to determine? When the appellant submitted the questions to the trial court the decision of the arbitrator had been made, although the formal entry of the award had been postponed. If the appellant was of the opinion that the arbitrator required the assistance of the trial court on questions of law, it seems to us that the intent and spirit of the Arbitration Act required that he should have presented to the trial court the questions of law and obtained the opinion of the court in reference to the same before the cause was submitted to the arbitrator upon questions of fact *and law* for his decision. If the position of the appellant is

justified under the act, then an arbitration proceeding, instead of being an aid to disputants, would be merely the entrance to a law suit.

After the trial court had answered the four questions submitted to him, the appellant then submitted another question to the court, and now complains that the court erred in refusing to pass upon the same and that the judgment of the court should be reversed for that reason. The action of the trial court was fully justified. The argument of the appellant amounts to this, that he had the right to formally submit questions of law to the arbitrator, and if the questions were decided by the latter adversely to him and the cause decided against him, he then had the right to submit questions of law to the court, and if the court answered them adversely to him, to submit others, and if in answering any of the questions the court erred, the judgment must be reversed and the award set aside.

We are satisfied that the award is a just one and should be sustained. The contention of the appellant that there was not a valid and binding acceptance of the loan made by the Insurance Company, is clearly an afterthought, and without merit. The appellant was represented, during the negotiations, by an able and experienced attorney, and at the time that the appellant, to use the language of his attorney, "abandoned his Insurance Company loan and sought it elsewhere" no such point had been made or suggested by the appellant or his attorney. Both were satisfied that the Insurance Company had accepted the loan and they submitted to the attorney for that company for examination the abstract of title, and all objections to the title had been practically waived at the time that the appellant "abandoned the Insurance Company loan." It is very significant that the appellant tried hard to secure a larger loan from the Insurance Company than it was willing to make. During the negotia-

tions over the objections raised to the title the attorney for the appellant, without the knowledge of the appellees or the attorney for the Insurance Company, went to the Central Trust Company and made an application for a loan. That company was willing to loan the appellant $900,000, whereas the Insurance Company would not loan more than $800,000, and while the attorney for the Insurance Company was preparing to close the matter with the appellant the latter secured a loan from the Trust Company for $900,000 and thereafter refused to carry through the loan with the Insurance Company. In appellant's brief appears the following: "The abstracts of title were submitted on April 23, 1925, to Mr. Trumbull of that firm (Messrs. Judah, Willard, Wolf & Reichmann, attorneys for the Insurance Company), who prepared a lengthy list of objections to the titles to both properties, on several of which he stood, refusing all appellant's efforts to cure the alleged defects. He proved so arbitrary and difficult to deal with *that on May 7, 1925, Mr. Schulman abandoned his Insurance Company loan and sought it elsewhere.* The question of whether or not he was within his legal rights in so doing was argued before the Arbitrator and decided by him adversely to Mr. Schulman, and not being covered by any proposition of law, need not concern us further." The arbitrator found that the time taken in the examination of the abstracts was not unreasonable. It is not contended that the appellant or his attorney ever claimed or considered, during the negotiations, that the Insurance Company had not made a binding acceptance of the application of appellant. In fact, the appellant, in proposition of law number four, submitted to the arbitrator, and in question of law number four, submitted to the trial court, admits, in effect, that he made no such claim, and seeks to excuse his failure in that regard by pleading ignorance of the actual situation.

The arbitrator found that the appellees procured a valid and binding acceptance by the Insurance Company of the appellant's application within the time stipulated. The attorney for the appellant was negotiating with the Trust Company for a loan of $900,000 while still dealing with the Insurance Company, and it is evident that as soon as he was certain that the Trust Company would loan the appellant $900,000 the latter determined to "abandon the Insurance Company loan." The major contention of the appellant is a mere pretext, without merit, and advanced to avoid a just obligation.

The judgment of the circuit court of Cook county should be and it is affirmed.

*Affirmed.*

KERNER, P. J., and GRIDLEY, J., concur.