CASE 5—MANDAMUS—JUNE 11.

86  23<br>106  515

# Hewitt, Auditor, &c., v. Craig.
# Rodman's Ex'r v. Craig.

### APPEALS FROM FRANKLIN CIRCUIT COURT.

1. ARBITRATION AND AWARD.—An act directed by law to be done by three or more persons may be done by a majority of them concurring, unless by express words or by implication a contrary intention appears.

    Matters in dispute between appellee and the State, growing out of business transactions, were, by a special act of the Legislature, referred to three commissioners for settlement, the act providing that if their settlement, a majority of them concurring therein, showed that the State was indebted to appellee, it should be certified to the Auditor as their award, and that the Auditor should draw his warrant on the Treasury of the State for the amount thereof. The arbitration was made by only two of the commissioners appointed, the third commissioner declining to participate in the arbitration. *Held* —That the award was valid, although only two of the commissioners participated in the arbitration.

2. CONSTITUTIONAL LAW.—The act was not, in the constitutional sense, an appropriation of money or the creation of a debt, and, therefore, was valid, although not passed by a majority of the members of the Legislature, and although the ayes and noes were not entered in the journal.

3. THE AWARD of the commission is final as to the matters within the scope of their authority.

4. IN A PROCEEDING FOR A MANDAMUS to compel the Auditor to draw his warrant on the Treasury of the State, the court can not permit a third person to come in and litigate his claim with the plaintiff, upon the ground that he has a lien upon the debt which the State owes the plaintiff.

P. W. HARDIN, ATTORNEY-GENERAL, FOR FAYETTE HEWITT, AUDITOR.

Brief not in record.

J. W. RODMAN AND D. W. LINDSEY FOR RODMAN'S EX'X.

1. Gen. Rodman, under section 15, page 149 of General Statutes, had a lien upon the claim of Craig against the State from the time he first

24        KENTUCKY REPORTS.        [Vol. 86.

Hewitt, Auditor, &c., v. Craig.  Rodman's Ex'r v. Craig.

appeared before the legislative committees in advocacy of said claims. (Robertson & Cleary v. Shutt, &c., 9 Bush, 659.)

2. All persons having an interest in the subject-matter of an action or proceeding, whether adverse to the plaintiff or defendant, or both, whether they be necessary parties or not, may intervene, and if such person is a necessary party to a complete determination of the question involved in the action, it is the duty of the court, of its own motion, to make such person a party. (Pomeroy's Remedies and Remedial Rights, sec. 427; Civil Code, secs. 22, 23, 28 and 29.)

Section 29 of the Code must be construed in connection with subsection 10 of section 732, wherein the phrase, "personal property," is defined to mean or embrace "money, goods, chattels, things in action and evidences of debt."

3. Whether or not appellant's pleading was properly denominated a crosspetition is immaterial. A misdescription in the caption of the nature of the defendant's claim does not prevent him from having judgment. (Civil Code, sec. 97, subsec. 4.)

4. The word "action," when used in the Code, is to be construed to embrace special proceedings so far as the provisions of the Code are applicable to such proceedings. (Civil Code, sec. 732, subsec. 4.) Therefore, sections 22 and 23 of the Code apply to appellant's claim.

5. But a proceeding for a writ of mandamus is a civil action and not a special proceeding. (Civil Code, secs. 2 and 474.)

6. Craig cannot make the defense that Rodman's executrix is in effect suing the State without authority to do so. He cannot shield himself behind an exemption which the State does not claim, and which it has the right to waive. (Drake on Attachments, 4th ed., sec. 516.)

7. The right in Craig to sue the State before the special tribunal enured to the benefit either before or after the judgment of that tribunal of any one to whom the right or interest in said claim in whole or in part may have lawfully passed.

8. The Auditor was notified of the lien claimed and he should have answered to that effect and made Rodman's executrix a party. (Anderson County Court v. Stone, 18 B. M., 848.)

W. L. JACKSON, JR., FOR APPELLEE.

1. The finding by a majority of the commission was all that was required, for the reason that the act itself so provides. But even if the act were silent upon this point the finding would be sufficient, for where a power is of a public nature the majority may perform the act delegated, the power being considered joint and several, and this is true where the power is conferred by a statute. (Wait's Actions and Defenses, vol. 6, p. 521; Eames v. Eames, 41 N. H., 177; Gas Company v. Wheeling, 8 W. Va., 320; Patterson v. Leavitt, 4 Conn., 50; Young v. Buckingham, 5 Ohio, 485; Sinclair v. Jackson, 8 Cow., 543;

VOL. 86.]　　JANUARY TERM, 1887.　　25

Hewitt, Auditor, &c., v. Craig.　Rodman's Ex'r v. Craig.

Withnell v. Gartham, 6 Tenn. Rep., 388; Smith's Mercantile Law, 163, Note X.)

This is especially the case where judicial authority is conferred by statute.

The commission which passed upon appellee's claim was a special court for the trial of a special case, being in fact a court of claims, with its jurisdiction confined to a single case. (Story on Agency, sec. 42, note 2, and sec. 43, note 2; Jewett v. Alton, 7 N. H., 253; Scott v. Detroit Society, 1 Doug. (Mich.), 119; Caldwell v. Harrison, 11 Ala., 755.)

2. The finding of the commission is final, and the court cannot go behind its decision or award.

3. It was not essential to the validity of the act for the benefit of the appellee that it should pass by a majority of all the members of the Legislature, or that the yeas and nays should be entered on the journal. There was not an appropriation of money within the meaning of sec. 40 of art. 2 of the Constitution. (Commonwealth v. Jackson, 5 Bush, 680.)

4. The court acted properly in dismissing the petition of Rodman's executrix.

The Code does not allow such a proceeding in a mandamus case. (Civil Code, secs. 29, 96 and 474.)

General Rodman was not entitled to a lien on appellee's claim against the State. A claim against the State is not embraced by sec. 15 of art. 1, chap. 5, of the General Statutes, giving attorneys a lien, and it is fundamental that the Commonwealth is not embraced by an act which is made to operate between individuals, unless there is something in the act which shows an intention to subject the State to the same rule. (Divine v. Harvie, 7 Mon., 439; Commonwealth v. Cook, 8 Bush, 225; Nail v. Springfield, 9 Bush, 674; U. S. v. Knight, 14 Peters, 315; State v. Garland, 7 Ired. (N. C.), 50.)

The State cannot be sued, and this rule cannot be evaded by attaching money in the hands of its officers. (Drake on Attachments, sec. 516a; Tracy v. Hornbuckle, 8 Bush, 336.)

The right to intervene under section 29, Civil Code, does not exist in an action to recover money. (Pomeroy's Remedies and Remedial Rights, sec. 424, and authorities.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The Legislature of this State, at its last session, passed an act for the benefit of the appellee. The preamble to the act sets out, in substance, that certain settlements had been made and suits determined be-

26 KENTUCKY REPORTS. [Vol. 86.

Hewitt, Auditor, &c., v. Craig. Rodman's Ex'r v. Craig.

tween the State and the appellee, growing out of the claims of the latter as agent of the State and keeper of the penitentiary; and that in said settlements, which were made through commissioners appointed by the State, certain mistakes were alleged by the appellee to have been made against him in giving the State improper credits, and in failing to allow him certain claims to which he was entitled. And in order to make a final adjustment of said matters upon principles of equity and justice, it was enacted that a commission consisting of three persons, one to be named by the Governor of the State, one by the appellee, and the third by the two thus named, who were authorized and empowered to take into consideration all of the reports of former commissioners, and the late report of the Governor, and all other documents connected with said matter, and make a full and final settlement of the same according to the evidence and equity of the case. And if their settlement, a majority of them concurring therein, showed that the appellee was entitled to any further compensation from the State, the same was to be signed by them, or by the majority members concurring therein, as their award, which they were to certify to the Auditor of the State, who was directed to draw his warrant on the Treasury of the State in favor of the appellee for the amount of the award.

Three commissioners were appointed as directed by the act. They all accepted the appointment. The arbitration of said matters was made by only two of said commissioners, the third one declining to participate in the arbitration. The two commissioners awarded to the appellee the sum of three thousand eight hundred and

forty-seven dollars and eighty-three cents, with interest thereon from January 1, 1856, until the first of December, 1886. The award was signed by them and certified to the Auditor. He refused to draw his warrant on the Treasury for the amount, and the appellee entered this action against him in the Franklin circuit court, praying for a mandamus. The mandamus was granted, and the Auditor has appealed to this court.

The appellant contends, first, that the act *supra* required all three of the commissioners to participate in the arbitration, and then any two of them might agree in making an award ; but as only two of the commissioners participated in the arbitration, the whole proceeding was void.

Section 3, chapter 21, of the General Statutes, on "Construction of Statutes," provides that "words purporting to give authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or other persons."

And section 679 of the Civil Code provides that "an authority conferred by law upon three or more persons may be exercised by a majority of them concurring ; and an act directed by law to be done by three or more persons may be done by a majority of them concurring."

The legislative rule of construction adopted in the General Statutes was, several years thereafter, incorporated in the Civil Code. And we see no reason why the same rule of construction should not be applied to any subsequent legislative act, though of a special nature, which confers authority upon three or more persons to do certain things, unless the language of the act, by express

words or by clear implication, or the nature of the authority given, shows a contrary intention; and we are of the opinion that neither the language of the act under consideration, nor the nature of the services to be performed by the commissioners, shows an intention on the part of the Legislature to require all three of the commissioners to participate in the arbitration, preparatory to the right of any two of them to make a valid award. In aid of this construction is the case of Green v. Miller, 6 John., 39, where the arbitrament was confided to four persons, and the award was to be made and delivered in writing, under the hands and seals of the four, or any three of them; and only three of them participated in the arbitration, and made the award in writing, the fourth declining to act. It was contended that as the arbitrative authority was given to all four, and not to the three, the arbitration by a less number than the four was void; and the words authorizing any three of them to make and sign the award did not alter the authority. But it was held that although the words, at the first, were to the four jointly, yet, by the subsequent provision, the authority was disjoined so as to make the submission to the four, or any three of them. That the subsequent provision was not a distinctive provision, but explanatory of the intention of the parties. In the case of Crofoot v. Allen, 2 Wend., 496, the same principle is announced. And many other cases might be quoted to the same effect.

The fact is alleged in the answer, and not denied, that the act was not passed by a majority of the members then elected. The second contention, therefore, is, that

the act is in contravention of section 40 of article 2 of the State Constitution, which declares that the General Assembly shall have no power to pass any act or resolution for the appropriation of any money, or the creation of any debt, exceeding the sum of one hundred dollars, at any one time, unless the same on its final passage shall be voted for by a majority of all the members then elected to each branch of the General Assembly, and the ayes and nays thereon entered on the journal.

The act under consideration is not, in the constitutional sense, an appropriation of money, or the creation of a debt. Because the matters which were submitted to arbitration by the act grew out of business transactions that the State had with the appellee many years before, which transactions were doubtless authorized by law, and out of which differences sprang in their repeated attempts to settle. So, the act did not attempt to make an appropriation or to create a debt, but to adjust and settle, by arbitration, any legal or equitable liability that the State was under, growing out of these business transactions with the appellee, which had been authorized by law. And if the arbitrators found that the State was legally or equitably indebted to the appellee, growing out of these transactions, they were to certify the same to the Auditor, who was to draw his warrant on the Treasury for the amount, not in payment of an appropriation or debt created by the act, but in payment of a liability previously created by law, the amount of which was definitely ascertained by the arbitrators. Therefore, we conclude that the act is constitutional.

The appellee, by his answer, attempted to re-open and re-litigate the matters of difference between the State and the appellee, which the commissioners were authorized to settle and did settle. This the appellee could not do ; for the reason that the commission was constituted a court of arbitration and award, with power to make a full, complete and final settlement between the State and the appellee ; and the award was to be a final judgment, irrevocably binding the State and the appellee. And the award was *res adjudicata* as to all matters falling within the scope of the authority of the commission. And these matters could not be re-litigated in any other court.

The appellant, H. V. Rodman, as the executrix of John Rodman, deceased, sought by her petition and amended petition to be made a party to the action in the court below, for the purpose of asserting a claim of two thousand dollars against the appellee, which she alleged the appellee owed her testate as an attorney's fee for services rendered in aiding the appellee before legislative committees, etc., to get the act under consideration passed, as well as preceding acts looking to the same end, and for other services appertaining to the appellee's claim. She also asserted an attorney's lien on the sum awarded to the appellee. She also sought to have the court to direct the Auditor to issue his warrant to her for said sum. The court dismissed her petition and amended petition without prejudice. She has appealed to this court.

A mandamus proceeding, as defined by section 477 of the Civil Code, "is an order of a court of competent and original jurisdiction, commanding an executive or

ministerial officer to perform an act or omit to do an act, the performance or omission of which is enjoined by law."

The appellee, by his petition, was not seeking to recover judgment for any money or property. His right to the money was not legally involved ; that matter had already been adjudicated, and his right established by a competent tribunal. He was merely asking the aid of the court to compel a ministerial officer to perform an act enjoined by law. The duty of that officer was to issue the warrant directly to the appellee, and the court's jurisdiction was limited to directing the officer to issue the warrant to the appellee without any conditions or qualifications whatever. And for the court to permit a third party to come in and litigate his claim with the appellee, upon the ground that he had some sort of a lien upon the debt which the State owed the appellee, would open up a system of practice inconsistent with this character of proceedings. Suppose the appellee had recovered a common law judgment in a circuit court against an individual, and upon the refusal of the clerk to issue execution upon the judgment, he had sought the aid of the court to compel the clerk to issue the execution, would it be contended that his attorney could interplead and litigate and establish his right to his fee, and have the same indorsed on the execution for his benefit? Surely not. The cases are similar.

The judgment of the lower court as to both cases is affirmed.