(No. 13426.—Reversed and remanded.)

HARRY PODOLSKY et al. Appellants, vs. MAX RASKIN et al.
Appellees.

*Opinion filed October 23, 1920.*

1. ARBITRATION—*decision of arbitrators is conclusive.* The object of arbitration is to avoid the formalities, delay and expense of litigation in court, and the decision of the arbitrators, acting within the scope of their authority under a submission agreement, is conclusive on the parties upon matters of law and fact.

2. SAME—*arbitrators are limited to the arbitration agreement.* The submission agreement is the instrument clothing the arbitrators with power to make an award, and they are limited to a decision of the particular matters submitted.

3. SAME—*courts construing arbitration agreements should ascertain intention of the parties.* In the construction of arbitration agreements courts seek to ascertain the intention of the parties as evidenced by the agreements and give effect to the intention.

4. SAME—*every presumption favors an award where whole controversy is submitted.* Where the whole controversy growing out of the transactions between the parties is submitted for arbitration and not merely a part of it, every presumption favors the award as being within the limits of the arbitration agreement.

5. SAME—*award need not be clothed in technical language.* It is not necessary for an award to be clothed in technical language nor that the evidence and each matter considered be set out to show how the arbitrators reached their conclusions of law or fact, but a simple announcement of their investigation and deliberations is all the law requires.

6. SAME—*when award will not be set aside.* An award which is in conformity with the general submission agreement and on the face of which no fraud or mistake appears will not be interfered with or set aside by the court for errors either of law or fact.

APPEAL from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

HAYNES & FEINBERG, (MICHAEL FEINBERG, of counsel,) for appellants.

RIEGER & RIEGER, (HYMAN POLONSKY, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal direct from the circuit court of Cook county. Appellants and appellees entered into an agreement to submit disputes and controversies which had arisen between them to arbitrators. The arbitrators, after hearing the respective parties, made an award in favor of appellants, which they filed in the circuit court, on which they asked and were given judgment against appellees. Appellees did not appear when the judgment was obtained, but a few days later, and at the same term of court, filed a motion to set aside the judgment. The court allowed the motion to set aside the judgment, and afterwards, on the motion of appellees, without hearing any evidence, set aside the award, declared it null and void, denied judgment on it and dismissed the petition. On the theory that a freehold is involved the appeal is prosecuted to this court.

October 13, 1917, appellants and appellees entered into a written contract by which appellants agreed to convey to the appellees certain premises described as No. 1746 West Division street, Chicago, for an expressed consideration of $9500, subject to certain taxes and special assessments; also subject to a first mortgage for $6500, due in about four and one-half years, at six per cent interest, payable semi-annually, and a second mortgage to secure $1000 payable in monthly installments of $60, with interest at six per cent per annum, payable monthly, all of which incumbrances appellees agreed to assume and pay. Appellees agreed to convey to appellants, for an expressed consideration of $17,500, two certain lots described and to erect on them a two-story and basement brick building in a first-class and workman-like manner, according to plans and specifications "herein-after set forth" and the ordinances of the city of Chicago. Appellees were to complete the building ready for occupancy by January 1, 1918, and deliver possession to appellants free and clear of all liens for materials or labor.

Appellees further agreed to procure someone to loan appellants $10,000 upon a mortgage or trust deed on the property, the loan to run for five years, with interest at six per cent. The proceeds of the loan were to be paid to appellees as part of the consideration for the property and the payment of the balance was provided for in the agreement. Payment was to be completed when appellants took possession of the building. Appellees agreed to convey said two lots to the appellants by warranty deed clear of all incumbrances, the deed to be delivered when the building was completed and possession taken by appellants, and the agreement of appellants was to convey the West Division street property to appellees by warranty deed, the deed to be delivered in escrow to Greenebaum Sons Bank and Trust Company, to be held until the written agreement had been complied with. November 27, 1917, a supplemental agreement was made, which provided for certain extra and additional labor and material to be furnished by appellees in the construction of the building provided for in the agreement of October 13, 1917, for which appellants agreed to pay appellees the additional sum of $3875. Of that sum $3750 was for an extra story and $125 for a cement driveway.

A dispute arose between the parties about the performance of the agreements, and on June 27, 1918, they entered into a written agreement to submit their controversies to arbitration. The arbitration agreement is too lengthy to set out in full. In substance it recited that controversies had arisen between the parties respecting the performance of the contracts of October 13, 1917, and November 27, 1917, which were made part of the arbitration agreement; that the controversies involved the claim on the part of appellants that the appellees did not comply with the plans and specifications and the requirements of the ordinances in the construction of the building; that the work was done in a careless manner; that the foundation was constructed of poor material and was inadequate in dimensions, as a re-

sult of which the building was in an unsafe and danger-
ous condition; that appellants were entitled to damages and
necessary expenses resulting from the failure of appellees
to comply with the contracts, and that appellants were en-
titled to an accounting. Appellees' claim was that they
had complied with their agreement and with the plans and
specifications in constructing the building; that appellants
had not sustained any loss by reason of any failure of
appellees to comply with the contract; that appellants had
overloaded the floor space of the building and negligently
allowed concrete to become frozen, thereby causing damage
to the foundation. Appellees also claimed they were en-
titled to pay for extras, and that the controversy involved
the validity of a lease executed by them for the West Di-
vision street premises to Benjamin Fishman. The arbitra-
tion agreement further recited that it was the desire of the
parties "to make this general submission for arbitration and
to submit generally and fully all of their respective disputes,
contentions and controversies existing as aforesaid, which
are above recited or which may be in any way connected
therewith, for a full, complete and final settlement or ad-
justment of the same." The agreement further provided
that Walter S. Baer was selected as arbitrator by appellants
and Max Levitan was selected by appellees; that said ar-
bitrators should have full power to settle the disputes, con-
tentions and controversies mentioned and to finally decide,
in respect thereto, "and render such award as in their
judgment and discretion may be just and proper in final
settlement of such controversies, disputes and contentions."
Each side was to pay the arbitrator selected by them, re-
spectively, for his services, and to bear equally the expenses
in having the testimony taken by a shorthand reporter and
the expense of transcribing the same, if it became neces-
sary to transcribe it. The arbitrators were authorized to
fix the time and place for hearing the parties and adjourn
the same from time to time until the hearing was completed

and render their finding and award as soon thereafter as convenient. A copy of the finding and award was to be delivered to each of the parties or mailed to them at their last known addresses. The agreement further provided that any court of competent jurisdiction might enter judgment upon the finding and award in accordance therewith, and the parties waived the right to object to the jurisdiction of the court or its right to enter judgment. They further waived and released any errors or defects that might intervene before the arbitrators or in the entry of judgment upon the award by a court, "it being the intention of the parties hereto that the submission of the finding and the award of the arbitrators shall be effective and binding and conclusive with the parties hereto, and to consent that a judgment may be entered upon such finding and award." The agreement further provided that all the parties constituted and appointed any attorney of a court of record their true and lawful attorney to enter their appearances in any suit brought upon any award made, waive the issuing and service of process and trial by jury and to confess judgment upon said award, releasing all errors that might occur or intervene, and to stipulate that no appeal should be prosecuted from the judgment nor bill in equity filed nor any proceeding of any kind taken to interfere in any way with the judgment, and execution thereon to be issued immediately. The submission agreement further provided that the finding and award of the arbitrators should forever bar the parties from asserting or attempting to enforce any claim, demand or right "involved in, arising out of or in any way connected with the matters herein submitted, except to enforce the finding and award so rendered."

The award of the arbitrators was made June 24, 1919, and, not being complied with by appellees, was filed by appellants in the circuit court of Cook county on July 25, 1919, and notice was given to the appellees, in accordance with the provisions of section 9 of the Arbitration and

Awards act, that application would be made to the court on a day named, for judgment on the award. Appellees filed their appearance and a motion to set aside the award of the arbitrators. The substance of the motion to. set aside the award was, that the arbitrators did not arbitrate and determine all the matters submitted to them, that they were mistaken as to the issues in controversy submitted to them and as to material facts, and that said mistakes amounted to gross misconduct.

The application for judgment on the award came on to be heard October 9, 1919. Appellants appeared before the court, but neither appellees, nor anyone for them, appeared. At the request of counsel for appellants the hearing was continued to October 11, 1919, and appellants' counsel wrote a letter to appellees' counsel notifying them of the continuance of the hearing to October 11, which letter was received by the appellees' counsel October 10. The cause remained on the trial calendar until October 14, when it was again reached for hearing. Appellants appeared but no one appeared for appellees, and a judgment was entered denying appellees' motion to vacate and set aside the .award and judgment rendered in favor of appellants for $1037.81, which was the amount of the award with interest thereon, and execution was ordered to issue. October 17 appellees made a motion to vacate the judgment and filed in support of the motion the affidavit of their attorney. The affidavit explains the reason appellees were not present when judgment was entered was that they did not know the case was on the call for hearing, but admits appellees' counsel received the letter from appellants' counsel on October 10 stating the case had been continued or re-set for the 11th, but counsel was "under the mental impression and imbued with the idea" that the cause was set for October 18.

On the 24th of March, 1920, the court sustained appellees' motion to vacate the judgment and vacated and set the same aside, and at the same time considered appellants'

petition and application for judgment and appellees' motion
to vacate and set aside the award, and without hearing any
evidence vacated the award, found appellants' petition for
judgment was without merit and dismissed the same. The
judgment recites as the reason for the court's action that
the award did not "definitely deal with all matters of dif-
ference contained in the submission agreement between the
parties, * * * in that the arbitrators by their said award
failed and neglected to make any finding or decision as to
certain matters contained in said submission agreement, and
that the said arbitrators exceeded the authority conferred
upon them by said submission agreement, in that they con-
sidered, decided and made certain findings upon matters not
contained in said submission agreement and which matters
were not before the arbitrators for decision, wherein and
whereby they pretended and attempted to render an award
as to the title of certain real estate located at 1746 West
Division street, Chicago, Cook county, Illinois, whereby they
decided that said real estate should remain the property of
the plaintiffs." From the judgment so entered the plain-
tiffs in that court have prosecuted this appeal to this court.

Arbitration as a method of settling disputes is recog-
nized by the common law, and in many jurisdictions stat-
utes have been enacted providing the procedure to be fol-
lowed and extending its scope and effect in a manner
unknown to the common law. Our statute on arbitrations
and awards in part provides that persons having the requi-
site legal capacity may, by an instrument in writing signed
by them, submit to one or more arbitrators any controversy
between the parties and agree that a judgment shall be ren-
dered on the award by any court of competent jurisdiction.
A submission to arbitration shall be irrevocable unless a con-
trary intention is expressed in the agreement of submission.
The award is required to be in writing and to definitely
deal with all matters of difference in the submission requir-
ing settlement. Provision is made for obtaining judgment

294 – 29

on the award in case either party fails to comply with it. If the award requires the performance of any act other than the payment of money, the court rendering judgment shall enforce the same by rule and proceedings for contempt against anyone failing to comply with it. If legal defects appear in the award or other proceedings the court may set it aside or remit the matters contained in it to the reconsideration of the arbitrators, or if it shall appear on oath or affirmation that the award was obtained by fraud, corruption or other undue means or that the arbitrators misbehaved, the court may set aside the award. If there is evident in the award miscalculation or misdescription, or if the arbitrators appear to have awarded upon matters not submitted to them not affecting the merits of the decision on the matter submitted, or where the award is imperfect in some matters of form not affecting the merits of the controversy, the court may modify or correct the award.

Appellees contend the court's action in setting aside the award was justified because it was not within the scope of the submission agreement; that the arbitrators exceeded their authority in attempting to award real estate not in controversy and not submitted to them for decision, and that the award is void because the arbitrators did not decide all matters submitted. Some other grounds are urged in support of the judgment, but in our view none of them are of such importance as to deserve special mention. The decision here must depend on whether one or more of the grounds mentioned are sustained.

The object of arbitration is to avoid the formalities, delay and expense of litigation in court, and the decision of the arbitrators, acting within the scope of their authority under the submission agreement, is conclusive on the parties upon matters of law and fact. (*Boston Water Power Co.* v. *Gray,* 6 Metc. 131; *Hewitt* v. *Craig,* 86 Ky. 23; *Thornton* v. *McCormick,* 75 Iowa, 285.) The submission agreement is the instrument clothing the arbitrators with

power to make the award and they are limited to a decision of the particular matters submitted. In the construction of arbitration agreements courts seek to ascertain the intention of the parties as evidenced by the agreement and give effect to the intention. The agreement here involved states disputes had arisen between the parties about the performance of the agreements of October 13, 1917, and November 27, 1917, involving the claim on the part of appellants that appellees had not constructed the building on said two lots in accordance with their agreement and had failed and refused to perform the contract "heretofore mentioned" according to its terms, by reason of which appellants had incurred expense and sustained damages which appellees were liable to pay. Appellees asserted they had complied with their agreement and that any damages sustained by appellants resulted from their own acts and conduct. Appellees claimed to be entitled to pay for "extras" and that the validity of a lease made by them to a tenant for the West Division street property was involved.

The arbitration agreement states it is the desire of all parties to submit generally and fully all of their disputes "existing as aforesaid which are above recited or which may be in any way connected therewith," for full, complete and final settlement. We understand that language to embrace the entire dispute or disputes about the performance of the two contracts by appellees. No reference is made in the arbitration agreement to any claim of appellees that appellants had in any respect failed to perform their part of the contracts. Briefly stated, the parties submitted for arbitration all disputes and controversies concerning the claim of appellants that appellees had failed to perform their contracts, and that such failure had caused expense and damage to appellants which they claimed appellees should pay. The arbitration agreement unmistakably submitted for arbitration and award every dispute and controversy growing out of the claim made by appellants and

the denial by appellees. The arbitrators awarded appellants $1025, to be paid in cash by appellees, "being the amount which was overpaid by Harry Podolsky *et al.* to said Raskin and Welch," and also awarded that the property No. 1746 West Division street remain the property of the appellants. The arbitrators found and recited in the award that the appellees had refused to live up to their agreement to take over that property; that appellants had been paying the interest on the incumbrances "and all expenses in connection therewith," and there being no disposition on the part of appellees to take it over, it was awarded to remain the property of appellants. The equity in the property appears to have been valued at $2000, and appellees in their brief value it at that sum.

The effect of the finding and award is that appellants were entitled to receive from appellees $1025 in cash and retain the West Division street property as compensation for the failure of appellees to comply with their agreements. There is no indication that the arbitrators considered, in arriving at their conclusion and award, anything except what they were authorized to consider. To settle the liability the appellants were to retain the West Division street property, the deed for which had not been delivered to and accepted by appellees, and in addition appellees were to pay appellants $1025 in cash. Appellees by the agreement of October 13, 1917, agreed to assume and pay the mortgages on the West Division street property, interest thereon and certain taxes and special assessments. The deed for the property was deposited, with the contract, with Greenebaum Sons Bank and Trust Company, to be delivered when the building appellees agreed to construct was completed and appellants had taken possession or evidenced their intention to take possession of it. The arbitrators found, as we have stated, that appellees did not comply with their agreement to pay incumbrances on the West Division street property and that the same were paid by appellants. These charges

were required to be paid to avoid a sale for taxes or fore-
closure of the mortgages, and the arbitrators found appel-
lees had indicated no intention of accepting the property,
the deed to which was still in the possession of Greene-
baum Sons Bank and Trust Company. It is clear that the
liability of appellees as fixed by the award was solely the
result of their failure to comply with the terms of their
written agreement, and as they had indicated no intention
of taking over the property on West Division street, the
award was that appellants should retain the property and
that the further payment to them by appellees of $1025
should be a full discharge of all liabilities growing out of
the controversy. The parties plainly agreed to submit for
arbitration all their disputes and controversies in any way
connected with the performance of the agreements of Oc-
tober 13, 1917, and November 27, 1917. The award is
within the limits of the arbitration agreement and every
presumption favors the award. (*White Star Mining Co.*
v. *Hultberg,* 220 Ill. 578; *Merritt* v. *Merritt,* 11 id. 565.)
The whole controversy growing out of the agreements of
the parties was submitted for arbitration and not merely a
part of it.

There is no support in the award for the claim of ap-
pellees that the arbitrators were mistaken as to certain mat-
ters and therefore the award is not, in fact, what was
intended, or that they were mistaken as to what was sub-
mitted to them for decision and award, or that they were
mistaken in any other respect.

The claim that an attempt to award real estate was un-
authorized is without merit. We have above explained the
situation of the West Division street property and its con-
nection with the controversy. Title was not vested in ap-
pellees and apparently they did not intend to take it. The
court had authority under our statute to make necessary
orders about the disposition of the deed that would leave
the title in appellants.

Under the award made it was unnecessary to determine whether a lease made by appellees was or was not valid. Appellees were not injured because that question was not passed upon nor were the merits of the award affected because the lease was not mentioned.

It was not necessary for the award to be clothed in technical language or to state each matter considered or that the evidence be set out to show how the arbitrators reached their conclusions of law or fact. A simple announcement of the result of their investigation and deliberations is all the law requires. (5 Corpus Juris, 116.) The rule is that if an award is in conformity with the general submission and no fraud or mistake appears on its face it will not be interfered with or set aside by a court for errors either of law or fact. (*White Star Mining Co.* v. *Hultberg, supra.*) The arbitrators stated in the award that it was made "as a full and complete decision and determination of all matters of difference, dispute or contention between the said parties submitted for decision by said arbitration agreement." No charge of fraud is made and no mistake or misconduct shown to justify a court in setting the award aside. The parties agreed to abide by the decision of the arbitrators. No evidence was heard by the court and nothing appears from the arbitration agreement and award made which affords any excuse to appellees for attempting to escape from its binding effect.

The judgment is reversed and the cause remanded to the circuit court, with directions to give judgment for appellants on the award.

*Reversed and remanded; with directions.*