## Lee, et al. v. Phelps, et al.

(Decided March 25, 1921.)

### Appeal from Marshall Circuit Court.

1. Drains—Proceedings for Establishment—Petition.—A petition to establish a drainage district is not bad because it fails to set forth all the names of owners of the lands in the proposed district.
2. Drains—Description.—A general description only of the land embraced in the proposed drainage district is all that is required in the petition.
3. Drains—Viewers—Report.—The civil or drainage engineer is a member of the board of viewers and he and another member of the board may alone make a report.
4. Drains—Proceedings for Establishment.—A proceeding to establish a drainage district which was commenced under the act of 1912 may be prosecuted under the 1918 act without the addition of petitioners to make 25 per cent. of the landowners, or 25 per cent. of the land.
5. Drains—Viewers' Report—Time of Filing.—It is not absolutely necessary that the viewers' report be filed within 30 days from the appointment of viewers, this part of the statute being merely directory.
6. Drains—Bond.—A defective or insufficient bond may be ground for dismissing the proceedings, if a good and sufficient bond is not given within a reasonable time to be fixed by the court.

JOHN G. LOVETT, WELLS & KEYS, COLEMAN & LANCASTER and WHEELER & HUGHES for appellants.

W. MIKE OLIVER for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This is a proceeding commenced in 1916 in the Marshall circuit court under section 2380, Kentucky Statutes, to establish a drainage district along the valley of Clark's river in Marshall, Graves and McCracken counties.

The petition was filed by two landowners in the drainage district in Marshall county and describes one large irregular boundary. Later the county judge appointed two resident freeholders of the county not interested in the drainage project, and not of kin to those interested therein, and a competent civil and drainage engineer as a board of three viewers in conformity to said act, to examine the land in the proposed drainage district described in the petition, make surveys, determine the boundaries, fix the elevations and make and file with the clerk of the court a written report of the work accomplished with such maps and profiles as would aid in determining the propriety or lack of necessity for the establishment of such drainage district. Some time after the qualification of said three viewers one of them resigned and another man possessing the statutory qualifications was appointed in his place. Soon thereafter another member died but this vacancy was not filled. The remaining two members finished the work and made the written report, accompanying it with data and maps required, all of which were filed in the county court.

Thereupon all the land owners of the district were properly brought before the court by process and by the giving of the notice specified in subsec. 2380, Kentucky Statutes.

Both a general and special demurrer were filed to the petition by some of the landowners, and exceptions to the report of the viewers. The county court sustained the demurrer and exceptions and dismissed and proceeding. An appeal was prosecuted to the circuit court where a trial de novo was had. As the landowners on the west fork of Clark's river did not object in the circuit court to the project to establish that part of the territory into a separate drainage district the court properly entered an order establishing all that part of the territory on the waters of the west fork into a separate district, and referred the matter to the Board of Drainage Commissioners of Marshall county for organization. At a subsequent term of the court, the demurrers both general and special to the petition were overruled and the

exceptions to the report of the viewers overruled, and a district established upon the east fork of Clark's river, but the petition was dismissed as to that part of the territory which lies below the confluence of the two forks. The landowners on the east fork are alone prosecuting this appeal, but there is no appeal from the order establishing the district on the west fork or from the judgment dismissing the petition as to the remaining territory.

Appellants urge the following reasons for a reversal of the judgment:

(1.) It fails to give the names of the owners of lands, so far as known to petitioners, whose lands are likely to be affected by the improvement.

(2.) Because it does not sufficiently describe the body of land affected.

(3.) Because it shows on its face that the stream is navigable.

(4.) The viewers' report should be quashed because it shows that it was not made by at least two resident freeholders.

(5.) And also because it does not provide for the deepening, widening nor straightening of the East Fork of Clark's river, but provides for the construction of a new drainage canal.

(6.) Because the survey was begun at a point at least two miles beyond the beginning points as stated in the petition.

(7.) The proceedings should be dismissed because the proof fails to show the necessity for the improvement as required by statute.

(8.) Because the law as it is now, provides that no such drainage districts shall be established until a twenty-five per cent. petition is filed.

(9.) Because the report was not filed within thirty days after the appointment of the viewers; nor was an extension of time granted by the court within thirty days after the appointment of the viewers; and that when the court did undertake to extend the time for the report no time was fixed within which it should be made.

(1.) The petition does not set up three separate boundaries of land and ask that they be formed into one single drainage district. The appellants insist that the proposed drainage district, as set out in the petition, is made up of three districts, independent bodies of land, and for this reason is unauthorized, and the petition

should have been dismissed by the circuit court as it was in the county court. The petition describes one general boundary of land, though it is quite long and very irregular in shape. This, however, is true of most drainage districts for they usually follow the streams. As the territory described in the petition was one contiguous boundary, and the report of the board of viewers contains a minute and definite description of this boundary all in one tract, we think the petition was not bad on this account.

(2.) It is argued that the petition should have been dismissed because defective in failing to name the owners of the land in the proposed drainage district. On the subject of naming the landowners the 1912 statute says:

"In said petition shall be set forth the names of the owners of lands, so far as known to the petitioners, whose lands are likely to be affected by the improvement."

As this is purely an *ex parte* proceeding and none of the landowners are affected or intended to be brought before the court until after the viewers have made and filed their report we conclude that the requirement to give the names of such landowners as were known to the petitioners was intended to aid the general description of the land and not for the purpose of notifying or concluding the rights of any of them. This part of the statute is directory only and the petition was not bad on account of the omission of the names. It could have served no useful purpose to have placed a list of the names of all the landowners of the proposed district in the petition, unless it would have helped the viewers to identify the land. This was unnecessary as only a general description of the land was required in the petition, and if it contained a description sufficient to enable the viewers to locate and survey it, the petition was not bad because the names were not copied into it.

(3.) The statute sets out fully what the petition shall contain. It says:

"In such petition, shall be set forth the body of the land, or district of the land in the county and adjoining county or counties, proposed to be ditched, drained or levelled, described in such way as to convey a general idea as to the location of the land."

A general description is all that was required in the petition. No doubt this was considered sufficient by the legislature in enacting the law, because a report of the

viewers would contain a complete boundary description of the land proposed to be drained or improved. The description in the petition gives the beginning point, then the general direction the same was to run, stating the section, township and range number through which it was to pass. This made quite specific what lands were to be improved. The statute does not require the viewers to follow the outline given in the petition, but they may take in more land or leave out part or all as appears to them best. We therefore think the description of the land in the petition a sufficient compliance with the requirements of the statute.

(4.) The petition alleges that Clark's river and all its tributaries are navigable when no doubt it was intended to say non-navigable. The sentence in the petition following this averment indicates this. Besides an amended petition was filed correcting this typographical mistake and averring the stream non-navigable except in high tide and then only near its mouth. In view of these facts appellants' contention that the petition avers the stream navigable and does not state a cause of action, is not tenable.

(5.) It is true that the viewers' report was made by two of the three members, but this was the full board as it existed at that time. One member had died after the work was only partly completed. The appointment of a new member would have necessitated the doing of all the work over. No appointment to fill the vacancy was made. Our statute, section 448, reads:

"Words purporting to give authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or other persons." See also Civil Code, section 679. 86 Ky. 23; 106 Ky. 509.

The engineer is a member of the board of viewers, the statute saying:

"The county judge shall thereupon appoint a competent civil and drainage engineer and two resident freeholders of the county, the two freeholders being persons not named in the petition, as interested, and not related to any of the parties so named who shall constitute the *board of viewers* to examine the lands named in the petition."

It therefore appears that the civil engineer by statute is a member of the board of viewers, and as such could

join with the other members of the board in making a report. A report so made was in all respects sufficient.

(6.) We think the report of the viewers sufficiently set forth the purpose of the organization of the drainage district, and things to be accomplished and shows that the east fork of Clark's river was to be deepened, widened and straightened.

(7.) It is true that the report of the viewers was not filed within thirty days after the appointment of the viewers, but we apprehend the requirement of the statute is merely directory for if it is not strictly complied with no harm is done. The statute provides for an extension of time in which to file the report upon application to the court. After the thirty days provided had expired the viewers applied to the court and were granted an extension of time. This was a substantial compliance with the statute and was sufficient, especially in view of the fact that no one was prejudiced thereby.

We have held that a proceeding to establish a drainage district under the 1912 act, may, if commenced before the 1918 act took effect, be prosecuted under the last act and judgment entered accordingly. Adams, et al. v. Horn, et al., 188 Ky. 333; Board of Drainage Commissioners of McCracken County, et al. v. Lang, Judge, et al., 187 Ky. 123.

A proceeding properly commenced under the 1912 act, could therefore upon motion of the petitioners or the board of drainage commissioners be prosecuted under the later act, sections 2380b-54. As the act of 1912 allowed one or more petitioners to begin such proceeding, one so commenced could be continued under the 1918 act, even though the latter act requires 25 per cent. of the landowners of the district or the owners of 25 per cent. of the land to sign such a petition. Hence there was no error in overruling the special demurrer to the petition.

At the time of the filing of the petition in the Marshall county court the petitioners undertook to execute a bond in compliance with the requirements of the statutes to pay the cost of the proceedings if the same failed. Though the bond was defective in form, it was taken and approved by the proper officer and was not void. Before the report of the viewers was filed a new bond conforming to the requirements of the law in all respects was executed by the petitioners in the county court, and accepted and

approved by the proper officials. With respect to the bond the statute says:

"Before any action is taken on said petition, the petitioners, or some one or more of them, shall execute a bond, with two or more individual sureties, or with some lawful surety or bonding company, to be approved by the county clerk in either event, to the Commonwealth of Kentucky, for the use and benefit of any party in interest, and in a sum not to exceed two hundred dollars per mile for each mile in length of the proposed improvement, conditioned for the payment of all costs and expenses incurred, in case the court shall fail or refuse to grant the prayer of said petition. If at any time during the proceeding the court shall be satisfied the bond first executed is insufficient in amount, it may require the execution of additional bonds, and upon failure of the petitioners to execute same when required, the petition shall be dismissed."

This allows a renewal of the bond. The object to be attained is to afford security for "cost and expenses" incurred, and if the bond does this appellant can not complain. But if a defective or insufficient bond is tendered or taken the court should, on motion of any interested party or on its own motion when the facts are brought to its attention, require a new and sufficient bond, and if the same is not made within a reasonable time to be fixed by the court, the proceedings should be dismissed; Civil Code, sec. 682.

The evidence shows that Clark's river is a very sluggish stream, with many crooks and meanders. It is also very shallow. Along near the stream the land is higher than back a short distance. The stream has been filled with filth and silt. At many points the lapse of trees has gorged the stream, while at other places the sand has filled the channel until the water can not pass. According to the estimates found in the evidence of the civil and drainage engineer, the water only flows about six inches per second in the channel as it now is, and the channel is so crooked that it is twice as long as it should be.

He therefore estimates that if it be straightened and deepened, its fall would be greatly increased and the water would flow five feet per second instead of six inches per second, and the distance being reduced by one-half would enable the water from the stream to pass out in

one-twentieth of the time it now takes; in other words the improvement will carry twenty times as much water as the old channel. There is no evidence to the contrary. He also says the construction of the canal is entirely feasible, and gives an estimate of the cost. Many other witnesses testify that the valley along the river can be profitably drained; that the land will become more productive and will sell for a much higher price than at present. There is evidence also that the drainage of the valley will promote health and sanitation. Considering all this evidence together the trial court found that the proposed improvement would be advantageous to the district in all the ways mentioned in the statutes as grounds for such projects. His finding is fully supported by the evidence and will not be disturbed.

Judgment affirmed.