ROY BINKLEY, Plaintiff-Appellee, *v.* JAMES MAROS *et al.*,
Defendants-Appellants.

First District (1st Division)   No. 79-272

Opinion filed December 10, 1979.—Rehearing denied January 14, 1980.

Feiwell, Galper & Lasky, Ltd., of Chicago, for appellants.

Michael L. Shakman and Geraldine S. Brown, both of Chicago (Devoe, Shadur & Krupp, of counsel), for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff Roy Binkley received an arbitration award of $88,400 for architectural services rendered during the construction of a personal residence for defendants, James and Bessie Maros. The parties had entered into a contract whereby plaintiff was to design and supervise the construction of the home. As compensation, plaintiff was to receive 12 percent of the construction cost, plus $30 an hour for certain additional services. Subsequently, plaintiff filed a demand for arbitration on the grounds that defendants refused to pay him all that he was owed.

Defendants filed their own suit to stay arbitration, alleging that the parties entered into a subsequent agreement for a lump-sum settlement of $40,000. The trial court refused to stay arbitration and ordered proceedings to begin forthwith. Defendants then filed a counterclaim for design flaws, with the arbitrator. At the conclusion of the hearings, the arbitrator rendered an award in plaintiff's favor.

Subsequently, defendants filed a motion to vacate the award with the trial court. The motion was denied and a judgment was entered in plaintiff's favor for the full amount of the award, plus interest. Defendants appeal.

On appeal defendants argue that the arbitrator exceeded his authority by rejecting all evidence that the parties executed a subsequent, lump-sum agreement. As a result, he rendered an excessive award that compensated plaintiff two and three times for the same services.

We affirm.

In November of 1972, plaintiff Roy Binkley was introduced to codefendant Bessie Maros by Niko Geane, an interior designer. The purpose of the meeting was to discuss the possibility of plaintiff designing a home for defendants. Mrs. Maros inquired whether a "beautiful house" could be built for $200,000. Both plaintiff and Geane assured her that such a house could be built. In subsequent meetings, a budget of $250,000 to $300,000 was set. It was also agreed that plaintiff would develop preliminary designs for the house. Though there was no written agreement between the parties at this time, plaintiff had received a retainer and was working on this basis.

After the preliminary designs were finalized, plaintiff entered into an agreement with the architectural firm of Bernheim & Kahn for the production of all future drawings. In this way, plaintiff was able to limit himself to a design capacity only. Also about this time, plaintiff and defendants executed a standard AIA owner/architect agreement which they back-dated to February 1, 1972. The contract provided that plaintiff's compensation was to be 12 percent of the cost of all work designed or specified by him, plus $30 an hour for certain additional services. The contract also contained an arbitration clause which provided that:

> "All claims, disputes and other matters in question arising out of, or relating to, this agreement or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law * * * *The award rendered by the arbitrators shall be final,* and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof." (Emphasis added.)

The construction of the residence was unusually complex and extended over several years. Included in the design were such things as an elevator, a gym room, exterior terraces, central vacuuming and fire extinguishing systems, marble bathrooms and stairways, a swimming

pool and pergola, teak garage doors, and wrought iron entry gates. Involved in the construction were 30 independent contractors in addition to the general contractor. Their work was designed, specified and supervised by plaintiff. The total cost of construction, excluding the cost of the lot, eventually exceeded one million dollars. To coordinate construction, defendants requested plaintiff to devote himself to full-time, on-site supervision.

After working almost exclusively for defendants for a period of four years, plaintiff had received less than one-half of the amount he believed he was owed under the owner/architect agreement. He also had allegedly incurred substantial out-of-pocket costs for engineering services he rendered. As a result, in June of 1976, plaintiff filed a demand for arbitration.

Shortly before the arbitration hearing was to commence in December of 1976, defendants filed suit to stay the arbitration proceedings. In that suit, defendants alleged that the owner/architect agreement had been replaced by a "lump sum" agreement whereby plaintiff was to receive $40,000 for his services. The trial court dismissed the suit and ordered arbitration to proceed "forthwith." Defendants appealed the trial court's order and moved the appellate court to stay the arbitration proceedings. The motion was denied and arbitration proceedings began.

From April 19, 1977, to April 15, 1978, 20 hearings were held before the arbitrator. In addition, the arbitrator conducted an inspection of defendants' residence in connection with their counterclaim for negligent design and construction. Also presented to the arbitrator were defendants' assertions that plaintiff agreed to accept a $40,000 "lump sum" in lieu of the compensation provisions of the owner/architect agreement and that plaintiff "double-billed" his services. At the conclusion of the hearing, the arbitrator denied defendants' counterclaim entirely and awarded plaintiff $88,400 of his $117,633.25 claim.

Thereafter, plaintiff filed an application to confirm the award. Defendants filed a motion to vacate, which was denied. The trial court then entered an order affirming the award for the full amount, plus interest. Defendants appeal.

On appeal, defendants argue that the arbitrator exceeded his authority by disregarding all evidence that the parties entered into an agreement whereby plaintiff was to be compensated with a lump-sum payment of $40,000. As a result, they conclude, the arbitrator's award allowed plaintiff to be compensated two and three times for the same services.

Section 12(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1975, ch. 10, par. 112(a)) provides:

"(a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

■■■ A review of Illinois cases reveals that an arbitrator's award will not be set aside because of his errors in judgment or mistakes of law or fact. (*Merritt v. Merritt* (1850), 11 Ill. 565.) In *Sherfy v. Graham* (1874), 72 Ill. 158, the Illinois Supreme Court stated, "Nor will a mistake of law or fact by the arbitrators be ground for setting aside an award, but a mistake in the draft of the award may be reformed so as to conform to the award actually made by the arbitrators." (72 Ill. 158, 160; accord, *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 389 N.E.2d 1181; *Podolsky v. Raskin* (1920), 294 Ill. 443, 128 N.E. 534.) It is also clear that disputes should be settled without litigation and that judicial review, when necessary, is more limited than appellate review of a trial court's decision. (See *Garver*; *Bernhardt v. Polygraphic Co. of America* (1956), 350 U.S. 198, 100 L. Ed. 199, 76 S. Ct. 273.) In *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 9, 389 N.E.2d 1181, 1184 (quoting *Burchell v. Marsh* (1855), 58 U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99), the court stated:

" 'Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by

the parties, and would make an award the commencement, not the end, of litigation."

This same rationale applies here and as in *Garver*. The contractual provision that "The award rendered by the arbitrators shall be final * * *" should govern.

In the present case, it is clear that the arbitrator did not exceed his authority. Under the terms of the owner/architect agreement, its modification could be accomplished by both the owner and architect. During the arbitration proceedings no such document fulfilling these requirements and purporting to be the lump-sum agreement was ever introduced. Plaintiff also denied ever entering into such an agreement. Further, there was ample evidence to indicate that the July 6, 1972, letter which defendants contend disclosed plaintiff's approval of a fee of $40,000 was only an application of the 12 percent fee provision of the owner/architect agreement. At that time in 1972, the estimated cost of the residence was approximately $335,000, and 12 percent of that figure is approximately $40,000. Additional evidence supporting the arbitrator's finding that a $40,000 lump-sum agreement did not exist could be cited, but that is not our purpose.

As to whether the arbitrator's award allowed plaintiff double and triple compensation for his services, again, we must support the award. The evidence indicated that plaintiff not only designed the residence, for which he was to receive 12 percent of the cost of construction, but also engaged in additional services for which he was to receive $30 per hour. The additional services included such things as supervision of the contractors and travelling the country in search of proper materials. The arbitrator concluded that compensation for these additional services was justified and was not "double-billing." We will not disturb this finding.

Finally, we note that the arbitrator listened to 20 days of testimony during which both sides fully presented their case. Included were numerous documents and testimony of the parties and their various witnesses, many of whom were expert witnesses. After carefully considering all of the evidence, the arbitrator rendered an award which we believe the trial court properly refused to vacate.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.